F.R. LEPAGE BAKERY, INC., Appellant,

v.

ROUSH BAKERY PRODUCTS CO., INC., Appellee.

No. 88–1095.

United States Court of Appeals, Federal Circuit.

July 7, 1988.

Gerald J. Flintoft, Pennie & Edmonds, New York City, argued, for appellant. With him on the brief, were Philip T. Shannon, Brian D. Coggio and Thomas A. Canova.

G. Franklin Rothwell, Bernard, Rothwell & Brown, P.C., Washington, D.C., argued, for appellee. With him on the brief, was Raymond A. Kurz.

Before FRIEDMAN, RICH and NEWMAN, Circuit Judges.

RICH, Circuit Judge.

This appeal is from the decision of the United States Patent and Trademark Office Trademark Trial and Appeal Board (board), 4 USPQ2d 1401, granting the petition of Roush Bakery Products Co., Inc. (Roush) to cancel[1] the registration of the collective mark COUNTRY KITCHEN, No. 629,650, issued June 26, 1956, to American Bakers Cooperative, Inc. (ABC), subsequently as-

**1.** Cancellation No. 15,106.

signed to F.R. Lepage Bakery, Inc. (Lepage). We affirm.

The background facts leading to the decision of the board in this confused case are fully set forth in its published opinion and we shall not repeat them. We will, however, point out what we deem to be the significant and controlling facts, as to which we discern no dispute, wherefore we see nothing wrong with the resolution of this case by the board on cross-motions for summary judgment.

■ The Lanham Act (Trademark Act of 1946, as amended, 15 U.S.C. § 1051 et seq.) provides in § 1054 for the registration of "collective marks." The statute makes a clear distinction between such marks and "trademarks," at least in § 1054 which reads (emphasis ours):

> **§ 1054. Collective marks and certification marks registrable [Lanham Act Section 4]**
>
> Subject to the provisions relating to the registration of *trademarks* so far as they are applicable, *collective* and certification *marks*, including indications of regional origin used in commerce, shall be registrable under this chapter, in the same manner and with the same effect as are *trademarks*, by persons, and nations, States, municipalities, and the like, exercising legitimate control over the use of the *marks sought to be registered*, even though not possessing an industrial or commercial establishment, and when registered they shall be entitled to the protection provided in this chapter in the case of trademarks, *except when used so as to represent falsely that the owner* or a user *thereof makes or sells the goods* or performs the services *on or in connection with which such mark is used.* The Commissioner may establish a *separate register for such collective marks* and certification marks. Applications and procedure under this section shall conform as nearly as practicable to those prescribed for the registration of *trademarks.* (July 5, 1946, c. 540, Title I, sec. 4, 60 Stat. 429.)

Careful consideration of the wording of this statute makes it clear that collective marks and trademarks have certain recognized differences in their nature and function (and incidentally that collective marks and certification marks have certain similarities with which we need not here be concerned). The primary difference is that, as the statute assumes—collective marks having been well established before the statute was written [2]—a collective mark does not indicate a single entity which makes or sells the goods "in connection with which such mark is used," as does a trademark, but indicates that the goods come from a member of a group which is "exercising legitimate control over the use of the" mark. Collective marks are registered on a separate register from trademarks.

■ Notwithstanding the foregoing, the statute injects a bit of confusion in § 1127 [Section 45] in its definition of a collective mark which overlooks the distinction implicit in § 1054. The definition reads:

The term "collective mark" means a trademark or service mark used by the members of a cooperative, an association or other collective group or organization and includes marks used to indicate membership in a union, an association or other organization.

Considering the fact that the same section defines "trademark" as meaning "any word, name, symbol, or device or any combination thereof adopted and used by a *manufacturer or merchant to identify his goods*" (our emphasis), there is an obvious inconsistency in the use of the term "trademark" in defining the term "collective mark." Nevertheless, the point emphasized by the definition, flawed though it may be, is that the *users* of a *collective mark* must be members of an "organization," rather than a maker or seller, such as a "cooperative, an association or other collective group" or a "union." An individual person or corporation which is making and/or selling goods on which a trademark is being used is not, in that capacity, the

owner of a *collective* mark and cannot register it as a collective mark. This is true even though such a person or corporation is a member of a collective group.

Section 1054 makes the registration of collective marks "[s]ubject to the provisions relating to the registration of trademarks" and § 1051 provides that the "owner" of a trademark "may register."

The sole issue which this appeal presents is whether a corporation in the bakery business, making and selling its wares under the trademark COUNTRY KITCHEN, is entitled to own and assert against others, in the courts or otherwise, a *collective* mark *registration* of COUNTRY KITCHEN for bread which it acquired by assignment. We think not.

The collective mark registration of COUNTRY KITCHEN at bar was originally properly issued to ABC, a cooperative, Lepage being one of the members thereof entitled to use the mark *as* a trademark. However, when that registration was sold or assigned to Lepage, or an attempt was made to do so, Lepage put itself, by accepting the assignment, into the untenable position of owning a registration to which it had no right under the law. With the collaboration of ABC, it is the owner of record of the collective mark registration.

As appears from the facts recited in the board's opinion, Lepage is attempting to assert the procedural rights which the collective mark registration of COUNTRY KITCHEN affords its owner against petitioner Roush or its licensees who are using trademarks of which the word COUNTRY is a part. There can be little doubt that the reason for Lepage's attempt to become the owner of the collective mark registration is to be found in a peculiarity of collective marks, namely, that the users of them, being members of a group all of whom are using the same mark, cannot qualify as owners of the mark as a true trademark, though they use it as such, and therefore cannot register it. It is precisely in this sense that a collective mark differs from an ordinary or true trademark. Though Le-

---

**2.** Provision for the registration of collective marks was first made in this country by an amendment to the Trademark Act of 1905 on June 10, 1938.

page's use of COUNTRY KITCHEN looks like and has the principal aspects of a trademark use (and, indeed, is referred to in the statute as a "trademark") Lepage cannot register it, nor can any other member of ABC. Therefore, to get the benefits of registration, it undertook to buy the collective mark registration.

■ A most confusing aspect of this case is that Lepage is making two inconsistent claims. (1) It claims to have acquired by assignment from ABC in 1985 not only the collective mark registration but also the good will associated therewith which would normally mean ABC's good will associated with licensing the use of COUNTRY KITCHEN to other members. (2) At the same time Lepage says it has licensed the use of COUNTRY KITCHEN back to ABC so it could license the other existing members, the purpose being, to quote Lepage's affidavit, "to continue the status quo which existed prior to the agreement." We will not attempt to decide where this leaves the good will associated with the collective mark or its registration. Of course, a registration is not a chattel which can be bought or sold "in gross" apart from the mark and the good will associated with it, *VISA, U.S.A., Inc. v. Birmingham Trust National Bank*, 696 F.2d 1371, 1375, 216 USPQ 649, 651 (Fed. Cir.1982), nor is it like a patent which is inherently and by statute endowed with "the attributes of personal property." 35 USC 261. This case exudes the odor of trademark law polluted with property law principles.

After reading all of the briefs as well as the board opinion and considering the precedents relied on, it appears that we are dealing with a case of first impression. It is therefore necessary that we reach a decision on the basis of established principles of trademark law.

■ No principle is better established than that ownership of a trademark in the United States is acquired by use in trade, not by registration, and that registration, at present, can be obtained only after the acquisition of ownership by use. That being so with respect to a "trademark" as defined in § 1127, a like principle must apply to a "collective mark," as defined in the same section where it is regarded as a species of trademark. The true trademark is there said to be "used by a manufacturer or merchant." A collective mark is said to be "a trademark or service mark used by the members of a cooperative, an association or other group or organization." It follows logically that only such an organization as is indicated by the statutory definition can become the owner of a collective mark and as a corollary only such an organization, after acquiring ownership by use, can obtain a collective mark registration. For the group or organization to part with such a mark or its registration by assignment creates an anomalous situation if attempted to be made to a non-organization type of corporation or to an individual. Such an assignment causes the registration, as the public record which it is, to become a misrepresentation indicating that the owner is a "group or organization" which it is not and, therefore, after such assignment the registration cannot be allowed to stand.

A basic principle pertaining to cancellation of registrations is that they were *obtained* contrary to the statute. The same principle logically applies (though the statute is silent on the point) if ownership is transferred to one who has no right, or would have had no right to obtain the registration. In this connection, § 1064(c) expressly provides for cancellation at any time if the registration was "obtained fraudulently or *contrary to the provisions of section 1054* " (our emphasis), that being the section which provides for the registration of collective marks. Section 1064(c) also provides for the cancellation at any time of the registration of a mark which has become abandoned.

■ Petitioner Roush propounded to the board and propounds to us a theory of abandonment predicated on the assignment to Lepage by the collective ABC. In sustaining the petition to cancel, the board agreed with petitioner that there has been "abandonment of the collective mark." In doing so, however, it applied a legal theory

based on the wording of § 1064(e) which has been the subject of much argument and which we find it unnecessary to pass on.[3] "Abandonment" may be as good a term as any to describe the net result in law of the dealings between ABC and Lepage. The original owner of the collective mark registration, properly issued to it, by a purported assignment gave up (abandoned) its rights to the registration and the good will in the registered mark as a collective mark. However, we prefer to rest our decision that the registration must be cancelled on the fundamental proposition that a collective mark registration cannot be owned by one who would not be entitled to obtain it under the statute. What the statute does not permit cannot be finagled by agreements between private parties. Lepage has no right to own a collective mark registration and the registration, being in its ownership, must be cancelled.[4]

Lepage's Reply Brief makes extensive argument on the basis that Roush introduced a new argument on appeal in contending that "the owner of a collective mark registration must be a collective organization." We see no merit in this argument since the board's opinion clearly shows it was before the board. At 4 USPQ2d 1402, col. 2, the board said: "Petitioner, in support of its motion for summary judgment, asserts ... that the assignment of the involved registration was void ab initio since respondent is not a cooperative or similar entity, but rather the producer of the goods identified with the mark."

The decision of the board granting the petition to cancel is

AFFIRMED.

---

**3.** This is the theory that under § 1064(e) the "owner" of a collective mark cannot itself use the mark without subjecting it to cancellation at any time because of the language of subsection (e)(2) which applies specifically, however, to "certification marks." Under the theory, the same rule applies to collective marks as well because of their similarities and the language of § 1054 which, taken literally, seems to say just that. The rule is known as the "anti-use by owner" rule. The briefs devote much space to the validity *vel non* of that rule and the courts have been divided on it. We prefer not to participate in the debate. In any event, we have not seen mention of a situation like the present in which the "owner" acquired ownership by assignment rather than by use.

**4.** While it is not our province to give advice to parties, it would seem, according to Lepage's evidence, that ABC, the original and proper owner of the registration sought to be cancelled is still in operation as a cooperative and still licensing bakeries in collaboration with Lepage to use the collective mark. If the registration were to be *reassigned* to ABC, its apparent proper owner, before the PTO actually cancels it, there would seem to be no need to cancel. If asked for a stay of our mandate to enable a reassignment and consideration of its effect, we would willingly grant a reasonable one.