SEBASTIAN INTERNATIONAL,
INC., Plaintiff–Appellee,

v.

LONGS DRUG STORES CORPORA-
TION, Defendant–Appellant.

No. 94–55461.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 7, 1994.

Decided May 8, 1995.

E. Lynn Perry, Mark T. Jansen, Townsend and Townsend Khourie and Crew, San Francisco, CA; for defendant-appellant.

Richard H. Zaitlen and Thomas C. Reynolds, Spensley, Horn, Jubas & Lubitz, Los Angeles, CA, for plaintiff-appellee.

Peter J. Kadzik, Dickstein, Shapiro & Morin, Washington, DC, for amicus.

Michael D. Sandler and Lynne Graybeal, Foster, Pepper & Shefelman, Seattle, WA, for amicus.

Before BROWNING, GOODWIN and FERGUSON, Circuit Judges.

Per Curiam; Concurrence by Judge FERGUSON.

PER CURIAM:

Sebastian International sued Longs Drug Stores for trademark infringement and unfair competition. The district court preliminarily enjoined Longs from selling Sebastian's hair care products. Longs appealed. We reverse.

### Facts

Sebastian manufactures hair care products including shampoos, conditioners, hair sprays and styling lotions. Sebastian affixes its trademark, a large, stylized "S," to the front of each container.

Sebastian seeks to have its products distributed to consumers only through professional salons. It sells only to professional salons and distributors who are members of an organization created and controlled by Sebastian called the "Sebastian Collective Membership Program." Members must agree to resell Sebastian's products only to other members of Sebastian's "Collective" or to salon clientele. Sebastian registered a collective membership mark consisting of the words "Sebastian Collective Salon Member," [1] and affixes this mark to the back of containers of its products.

Longs purchases and resells Sebastian products, although it is not a member of Sebastian's "Collective." Since Sebastian sells its products only to salons and distributors who are members of the "Collective" and have agreed not to resell to non-Collective members like Longs, Longs presumably purchases Sebastian products from a salon or distributor who sells the product to Longs in violation of its agreement with Sebastian.

Sebastian filed this action against Longs contending that by reselling Sebastian products bearing the mark "Sebastian Collective Salon Member," Longs falsely represents to consumers that Longs is authorized by Sebastian to resell Sebastian products. Sebastian argues that such resales violate Sebastian's rights under the Lanham Act.[2]

### Discussion

#### I.

Since 1924, courts have recognized a basic limitation on the right of a trademark owner under the Lanham Act to control the distribution of its own products. Beginning with *Prestonettes, Inc. v. Coty*, 264 U.S. 359, 44 S.Ct. 350, 68 L.Ed. 731 (1924), courts have consistently held that, with certain well-defined exceptions, the right of a producer to control distribution of its trademarked product does not extend beyond the first sale of the product. Resale by the first purchaser of the original article under the producer's trademark is neither trademark infringement nor unfair competition.[3]

---

1. The mark was also registered as a collective service mark during the pendency of this appeal.

2. Section 32 of the Lanham Act, prohibiting trademark infringement, provides, in pertinent part:

   Any person who shall, without the consent of the registrant ... use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistakes, or to deceive ... shall be liable in a civil action by the registrant....

   15 U.S.C. § 1114(1). Section 43(a)(1) of the Lanham Act, prohibiting unfair competition, provides, in pertinent part:

   Any person who, on or in connection with any goods or services, or any container for

goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which ... is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person ... shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1).

3. *See, e.g., NEC Electronics v. CAL Circuit Abco*, 810 F.2d 1506, 1509 (9th Cir.1987) (sale of genuine trademarked product by seller unauthorized to sell not a violation of Lanham Act); *see also Matrix Essentials v. Emporium Drug Mart*, 988

The "first sale" rule provides a sensible and stable accommodation between strong and potentially conflicting forces. By guaranteeing that a product will be identified with its producer, it serves the legitimate purposes of trademark law—the producer gains the good will associated with the quality of its product, and the consumer gets exactly what the consumer bargains for, the genuine product of the particular producer.[4] On the other hand, the "first sale" rule preserves an area for competition by limiting the producer's power to control the resale of its product.[5] The "first sale" doctrine has proven to be a reliable and useful guide in an area in which a high volume of business-driven litigation must be expected.

For the express purpose of controlling the downstream distribution of its products to the ultimate consumers and eliminating "diversion" to unauthorized retailers, Sebastian seeks to avoid the "first sale" rule and enjoin Longs from reselling Sebastian products that Longs has purchased on the open market. We reject Sebastian's attempt to circumvent the "first sale" rule.

## II.

■ Sebastian argues the "first sale" rule is not applicable to articles sold under a collective mark. This would be a remarkable result.

The "first sale" doctrine was well established long before Congress authorized the registration of collective marks in the Lanham Act in 1946. Nothing in the language or legislative history of the Lanham Act suggests that, by authorizing the registration of marks identifying membership in a lodge, political party, club, or other collective organization, Congress intended to provide producers with a simple and fail-safe method to control the channels of distribution of trademarked products—a power they had been denied at least since the ruling in *Prestonettes*. In the half century since the Lanham Act was enacted, no court has detected the presence of such a legislative purpose. There is no mention of this possibility in Committee hearings or reports, on the floor of Congress, or in subsequent case law or commentary. The language of the Lanham Act precludes such a far-reaching departure from established trademark law by expressly providing that a collective mark shall have the same effect and provide the same protection as a trademark, effectively making the "first sale" rule equally applicable to both.[6]

## III.

■ Sebastian argues the "first sale" doctrine does not apply when resale by the first purchaser under the producer's trademark creates a likelihood of consumer confusion. Sebastian asserts that a survey it commissioned indicates that Longs's action of stocking and reselling Sebastian products bearing the collective mark has in fact confused consumers "into believing [falsely] that there is some type of affiliation, association, or approval between Longs and Sebastian...."

F.2d 587, 593 (5th Cir.1993) (same); *H.L. Hayden Co. v. Siemens Medical Sys.*, 879 F.2d 1005, 1023 (2d Cir.1989) ("[T]he unauthorized sale of a trademarked article does not, without more, constitute a Lanham Act violation."); Restatement (Third) of Unfair Competition § 24 cmt. b (1995) ("[T]rademark owner cannot ordinarily prevent or control the sale of goods bearing the mark once the owner has permitted those goods to enter commerce."); 3A Rudolf Callmann, The Law of Unfair Competition, Trademarks and Monopolies § 21.13 (4th ed. 1994 & Fall Cum.Supp. 1994) (under the "first sale" doctrine, mere resale of "the genuine plaintiff's article in its original form" is not trademark infringement).

4. *See, e.g., Inwood Lab. v. Ives Lab.*, 456 U.S. 844, 854 n. 14, 102 S.Ct. 2182, 2188 n. 14, 72 L.Ed.2d 606 (1982) (citing S.Rep. No. 1333, 79th Cong.,

2d Sess. 3 (1946), evidencing the Act's goal of protecting the trademark owner's investment in good will, and H.R.Rep. No. 944, 76th Cong., 1st Sess. 3 (1939), reflecting the goal of protecting against deceit of consumers).

5. *See, e.g.,* S.Rep. No. 1333, 79th Cong., 2d Sess. (1946) ("[T]rademarks are not monopolistic grants like patents and copyrights" and quoting *Prestonettes* ).

6. Section 1054 states, "collective ... marks ... shall be registrable under this chapter, in the same manner and with the same effect as are trademarks ... and when registered they shall be entitled to the protection provided in this chapter in the case of trade-marks...." 15 U.S.C. § 1054.

Sebastian's premise is false. The "first sale" rule is not rendered inapplicable merely because consumers erroneously believe the reseller is affiliated with or authorized by the producer. It is the essence of the "first sale" doctrine that a purchaser who does no more than stock, display, and resell a producer's product under the producer's trademark violates no right conferred upon the producer by the Lanham Act. When a purchaser resells a trademarked article under the producer's trademark, and nothing more, there is no actionable misrepresentation under the statute.

The Fifth Circuit's decision in *Matrix Essentials v. Emporium Drug Mart*, 988 F.2d 587 (5th Cir.1993), and this circuit's decision in *NEC Electronics v. CAL Circuit Abco*, 810 F.2d 1506 (9th Cir.1987), undercut Sebastian's argument. Matrix, like Sebastian, wished to channel the resale of its trademarked hair products through professional salons. Matrix placed labels on some containers reading "Sold Only in Professional Salons." Matrix sued Emporium Drug Mart for reselling Matrix hair products purchased in the open market, arguing that "by stocking Matrix products, Emporium is deceiving the public into believing that Matrix has authorized Emporium to do so." *Id.* at 590. The Fifth Circuit rejected Matrix's argument, stating, "[a]bsent more culpable conduct on the part of the seller, we are unwilling to find misrepresentation in the mere act of putting a manufacturer's product on one's shelf and offering it for sale." *Id.* at 593. In reaching this conclusion, the Fifth Circuit relied in part upon this court's holding in *NEC*, which applied the "first sale" doctrine despite the district court's finding "that some purchasers ... mistakenly thought their chips were protected by [the producer's] ser-

vicing and warranties." *NEC*, 810 F.2d at 1508.

As *Matrix* implies, conduct by the reseller other than merely stocking and reselling genuine trademarked products may be sufficient to support a cause of action for infringement. Sebastian relies upon two such cases finding Lanham Act violations because the reseller used the trademark in a manner likely to cause the public to believe the reseller was part of the producer's authorized sales force or one of its franchisees. *See Bandag, Inc. v. Al Bolser's Tire Stores*, 750 F.2d 903 (Fed. Cir.1984); *Stormor, a Div. of Fuqua Indus. v. Johnson*, 587 F.Supp. 275 (W.D.Mich. 1984). In both cases, the reseller's conduct went beyond the mere resale of the trademarked goods. In *Bandag*, the reseller used the producer's trademark in a telephone directory advertisement in such a way as to suggest the reseller was one of the producer's franchisees, 750 F.2d at 911, 916; in *Stormor* the reseller displayed the producer's trademark in the reseller's booth at a trade show and in a trade journal advertisement, and stamped the reseller's name on the producer's promotional literature and used it to advertise the resale of the producer's products by the reseller, 587 F.Supp. at 279.[7]

Nothing in the record suggests that Longs did anything more than stock and resell genuine Sebastian products lawfully acquired on the open market under the true Sebastian trademark—the precise conduct excluded from the Lanham Act by the "first sale" rule.

Sebastian seeks to bootstrap its case over this obstacle by arguing that when Longs resold genuine Sebastian products in the original containers, the membership mark placed on the container by Sebastian itself became a misrepresentation by Longs that Longs was affiliated with Sebastian.[8] If

---

7. Sebastian also contends that courts "have enjoined the resale of genuine goods even where the trademark owner arguably mislabeled the products," citing *Clairol, Inc. v. Boston Discount Ctr.*, 608 F.2d 1114 (6th Cir.1979). However, *Clairol* turned on the fact that the defendant sold Clairol's products without the instructions and warnings distributed with genuine Clairol products to assure their safe use. *See* 608 F.2d at 1120–21; *see also Shell Oil Co. v. Commercial Petroleum*, 928 F.2d 104, 107–08 (4th Cir.1991);

*Adolph Coors Co. v. A. Genderson & Sons*, 486 F.Supp. 131, 136 (D.Colo.1980).

8. To quote Sebastian: "This is not a case of simply stocking genuine goods bearing a genuine *trademark*, as Longs tries to make it out to be. Rather, Longs is voluntarily acquiring and displaying Sebastian products *bearing the collective membership mark* that, by definition and appearance, states 'Sebastian Collective Salon Member.' Longs is thus misrepresenting that it is part of, or

Sebastian were correct, a producer could avoid the "first sale" rule and invoke the assistance of the courts in controlling downstream distribution of its trademarked products simply by placing a statement on the container that the product was being resold only by affiliates of the producer. Because Sebastian itself placed the collective mark on its products, it is primarily responsible for any confusion that resulted from the mark's assertion of affiliation, and that confusion cannot be used to support a charge of infringement against Longs. *See Sega Enter. Ltd. v. Accolade, Inc.*, 977 F.2d 1510, 1528 (9th Cir.1992).[9]

### Conclusion

The "first sale" doctrine shields Longs from liability for the mere resale of Sebastian products, and it was error to grant Sebastian's motion for preliminary injunction.

REVERSED and REMANDED.

FERGUSON, Circuit Judge, concurring:

I concur in the reversal of the district court's preliminary injunction prohibiting Longs from selling Sebastian's hair care products. I write separately, however, in order to resolve an issue not discussed by the majority. The district court erred in holding that the collective membership and service mark in this case is valid. For this reason, Sebastian's motion for a preliminary injunction was meritless.

A collective mark, be it a collective trademark, membership mark, or service mark, is different from a trademark:

> The term "collective mark" means a trademark or service mark—
>
> (1) used by the members of a cooperative, an association, or other collective group or organization, or

(2) which such cooperative, association, or other collective group or organization has a bona fide intention to use in commerce and applies to register on the principal register established by this chapter, and includes marks indicating membership in a union, an association, or other organization.

15 U.S.C. § 1127. A primary consequence of this difference is that an "[a]pplication to register a membership mark must be made by the *organization* which controls or intends to control the use of the mark, and therefore, owns or is entitled to use the mark; *application may not be made by a member.*" Trademark Manual of Examining Procedure, § 1304 (emphasis added). In *F.R. Lepage Bakery v. Roush Bakery Products Co.*, 851 F.2d 351, 353 (Fed.Cir.1988), a case factually similar to the case at hand, the court held:

> An individual person or corporation which is making and/or selling goods on which a trademark is being used is not, in that capacity, the owner of a *collective* mark and cannot register it as a collective mark. This is true even though such person or corporation is a member of a collective group.

(Emphasis in original.) If an individual member of a collective does register a collective mark, the mark is invalid. *Id.*

The district court noted that Sebastian, and not the organization, filed to register the collective membership and service mark. The district court tried to distinguish *Lepage* from this case, holding that Sebastian is not a member of the collective group and consequently could rightfully register the marks. However, the charter of the collective group unambiguously states:

---

associated or affiliated with, the Collective, as well as Sebastian."

9. Sebastian concedes that it formed the Collective and created the collective mark "[i]n an effort to combat the 'diversion' of its products to [drug stores and other retail locations].... " As we held in *Sega*, a trademark owner's "deliberate decision ... to include in [its product] a device which would both limit general access and cause

false labeling," 977 F.2d at 1529, was contrary to trademark policy because " '[a] trademark is misused if it serves to limit competition in the manufacture and sales of a product. That is the special province of the limited monopolies provided pursuant to the patent laws.' " *Id.* at 1515–30 (quoting *Anti–Monopoly, Inc. v. General Mills Fun Group*, 611 F.2d 296, 301 (9th Cir. 1979) (citations omitted)).

The charter member of this business club is SEBASTIAN, and is not subject to loss of membership.

The district court's holding that Sebastian is not a member of the collective group was clearly erroneous.

As an individual member of the collective group, Sebastian was not entitled to register the collective membership and service mark. Because the collective mark is invalid, the district court's grant of a preliminary injunction on the basis of the protection provided by the mark was improper.