BULOVA CORPORATION, a New York corporation, Plaintiff,

v.

BULOVA DO BRASIL COM. REP. IMP. & EXP. LTDA., f/k/a Samsonliu Com.Rep. Imp. & Esp. Ltda., a Brazilian corporation, Defendant.

No. 01–338–CIV.

United States District Court,
S.D. Florida,
Miami Division.

April 6, 2001.

Sharon Kegerreis, Hughes, Hubbard & Reed LLP, Miami, FL, for Plaintiff Bulova.

Andrew C. Hall, Hall, David and Joseph, PA, Miami, FL, for Defendant Bulova do Brasil.

### ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION

JAMES LAWRENCE KING, District Judge.

THIS CAUSE comes before the Court upon Plaintiff Bulova Corporation's Motion

for Preliminary Injunction filed January 29, 2001. Defendant filed a Response to the Motion for Preliminary Injunction on March 9, 2001 to which Plaintiff filed a Reply on March 20, 2001. The Court heard oral arguments on Plaintiff's Motion and Defendant's responses thereto on March 21, 2001. Plaintiff subsequently filed a Supplemental Memorandum of Law on the preliminary injunction hearing on March 27, 2001, and Defendant filed an additional Brief in Opposition to the Motion for Preliminary Injunction on March 28, 2001. Plaintiff seeks an order from this Court to enjoin Defendant from further alleged infringement of the Bulova mark.

## I. Background

Plaintiff sells Bulova watches worldwide through authorized distributors and sub-distributors. On January 1, 1995, Plaintiff entered into a Distributors Agreement with Marsam Trading Corporation ("Marsam") in which Marsam became Plaintiff's exclusive distributor for regions of Latin America and South America including Brazil. In the five year Distributors Agreement, Plaintiff agreed to ship products to Marsam's warehouse in Miami for distribution. The Distributors Agreement expired on December 31, 1999.

The Distributors Agreement also granted Marsam the explicit authority to enter into contracts with subdistributors or sales representatives within its regions. On February 17, 1995, Marsam entered in to a Sales Representative Agreement ("Sales Agreement") in Miami with Defendant known then as Samsonliu, by which Defendant became the Marsam's subdistributor in Brazil. Plaintiff asserts that the Sales Agreement signed by Defendant explicitly stated that all trademarks, tradenames and copyrights will remain exclusive property of Plaintiff and specifically prohibited use of the Bulova trademark as part of Defendant's name.

On April 2, 1996, Defendant changed its company name from Samsonliu to Bulova do Brasil. Additionally, Defendant created a related company, Bulova Universal Ltda. and a website "bulova.com.br" which advertises and markets Bulova watches. Plaintiff alleges that Defendant attempted numerous times to register the Bulova mark in Brazil but had its application rejected because of Plaintiff's prior registration of the Bulova mark.

The Sales Agreement expired by its own terms on December 31, 1999 and provided that Defendant was to offer Marsam the remaining products in its possession and to discontinue all advertising related to any of the products. Plaintiff alleges that to date, Defendant has not done so.

On October 9, 2000, Plaintiff formally notified Defendant of termination of its distribution rights and later, on December 15, 2000, delivered to Defendant a final "cease and desist" letter advising it to stop using the Bulova mark. Plaintiff alleges that when it attempted to appoint a new distributor in Brazil, Defendant interfered by representing itself to that potential distributor as being the only entity lawfully permitted to sell Bulova watches. Furthermore, Plaintiff alleges that Defendant warned that it would take legal action to prevent the business relationship and threatened to flood the Brazilian market with Bulova watches at very low prices to destroy the value of the Bulova brand.

Plaintiff subsequently filed suit against Defendant for: (1) breach of contract as third-party beneficiary; (2) trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114; (3) false

designation of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); (4) trademark dilution in violation of Section 43(c) of the Lanham Act, 15 U.S.C § 1125(c); (5) tradename infringement in violation of Article 8 of the Paris Convention; (6) false designation of origin and unfair competition under Article 10bis of the Paris Convention; (7) tradename infringement and unfair competition under common law; and (8) tortious interference with business relations.

## II.  Standard of Review

■■■■ To prevail on a motion for a preliminary injunction, the plaintiff must establish that: (1) there is a substantial likelihood of success on the merits of the claims; (2) he will suffer irreparable harm in the absence of injunctive relief; (3) the threatened injury to the plaintiff outweighs any potential harm to the defendant as a result of the injunction; and (4) granting the injunction would not be adverse to the public interest. *See Haitian Refugee Center, Inc. v. Nelson*, 872 F.2d 1555, 1561–62 (11th Cir.1989), *aff'd sub nom. McNary v. Haitian Refugee Center*, 498 U.S. 479, 111 S.Ct. 888, 112 L.Ed.2d 1005 (1991) (cite omitted); *see also Ingram v. Ault*, 50 F.3d 898, 900 (11th Cir.1995). Because a preliminary injunction is a "drastic remedy," the plaintiff bears the burden to "clearly establish" each of the four elements. *Café 207 v. St. Johns County*, 989 F.2d 1136, 1137 (11th Cir.1993). As this Court has previously stated, a preliminary injunction "is an extraordinary remedy, not available unless the plaintiff carries his burden of persuasion as to all of the four prerequisites. The primary justification for granting a preliminary injunction is to preserve the court's ability to render a meaningful decision after a trial on the merits." *Tefel v. Reno*, 972 F.Supp. 623, 633 (S.D.Fla.

1997) (King, J.). Further, the decision whether to impose an injunction is a matter of judicial discretion. *See CNA Financial Corp. v. Brown*, 162 F.3d 1334, 1337 (11th Cir.1998).

## III.  Analysis

### A.  Likelihood of Success on the Merits

■■■■ Plaintiff asserts that there exists a substantial likelihood that it will prevail on the merits. According to Plaintiff, Defendant breached its agreement with Marsam by adopting and using the Bulova mark, by confusing customers as to the affiliation of its product or service with Plaintiff in violation of the Lanham Act, and by reducing the ability to identify and distinguish Bulova goods. Defendant, in response, argues that the Sales Agreement offered by Plaintiff is a fake and that the "first sale" doctrine precludes success of Plaintiff's claims under Lanham Act. With respect to the authenticity of the Sales Agreement, the Court finds it unnecessary at this time to make a final determination. Instead, this matter will be resolved at a later stage in the proceedings. As for the "first sale" doctrine, this Court is unconvinced of its applicability to the facts of this case. The "first sale" doctrine generally holds that the mere resale of genuine merchandise that has been lawfully acquired may not be challenged by the owner of the trademark appearing on the genuine merchandise. *See Sebastian International, Inc. v. Longs Drug Corp.*, 53 F.3d 1073, 1074 (9th Cir.1995). However, Courts have limited this doctrine to cases where there is no other conduct of infringement or where the defendant is not culpable for anything more than mere reselling of a product. *See Id.; Allison v. Vintage Sports Plaques*, 136 F.3d 1443, 1444 (11th Cir.1998). What appears clear

at this stage of the proceedings is that Defendant has adopted at the least a version of the Bulova mark without Plaintiff's explicit permission and continues to use it despite Plaintiff's explicit objections. Thus, the Court holds that Plaintiff's remaining claims arising under the Lanham Act and common law are sufficient at this juncture of the proceedings to warrant a finding that Plaintiff is likely to succeed on the merits.

## B.  Irreparable Harm

Plaintiff asserts that without a preliminary injunction, its reputation and business will suffer irreparable harm. In response, Defendant points to the four and one-half years in which Plaintiff waited to bring forth this action as evidencing a lack of irreparable harm. However, an intentional infringer cannot assert this delay to avoid an injunction. *See Kason Industries, Inc. v. Component Hardware Group, Inc.*, 120 F.3d 1199, 1207 (11th Cir.1997). Defendant's continued intentional use of the Bulova mark is generating greater consumer confusion and trademark dilution with each passing day—an injury to Plaintiff's reputation and business which cannot easily by quantified or compensated financially. The Court also finds persuasive Defendant's alleged interference with Plaintiff future business relationships in Brazil and threats to initiate unfounded legal actions against potential new distributors which would prevent Plaintiff from conducting business in Brazil. But this Court is most troubled by the allegations that Defendant has threatened to destroy the market for Bulova products in Brazil by dumping its supply of Bulova watches into the market. The Court recognizes that it would be almost impossible to attempt to discern, quantify, and fairly compensate Plaintiff economically for damage resulting from such an action. Thus, the Court finds sufficient irreparable harm to justify granting a preliminary injunction.

## C.  Weight of Injury to Plaintiff and Defendant

Defendant contends that a preliminary injunction would cause it significant injury. Defendant notes that it has operated for five years under its current trade name, expended significant money in advertising and building good will associated with its trade name, and an injunction would cause a hundred employees to lose their jobs. However, as a willful infringer, Defendant should not be immunized from injunctive remedy by the extent of his investment. *See L.C. Page & Co. v. Fox Film Corp.*, 83 F.2d 196, 200 (2d Cir.1936). The preliminary injunction sought only prevents Defendant from benefitting further from the Bulova mark and does not prevent Defendant from providing services or selling products connected with other branded watches that it sells.

## D.  Public Interest

Defendant argues that there is no public benefit that would stem from a preliminary injunction. It asserts that the Brazilian public is not being harmed by its activities. However, there is a public benefit in ensuring that the public is not subject to continued dissemination of misinformation concerning public companies and their products. In particular, there is a public interest in preventing the Brazilian people from confusing Defendant as part of or associated with Plaintiff in any way.

## IV.  Conclusion

Accordingly, after a careful review of the record and the Court being otherwise fully advised, it is

ORDERED, ADJUDGED and DE-CREED that Plaintiff's Motion for Preliminary Injunction be, and the same is hereby, GRANTED. Defendant Bulova do Brasil, its agents, employees, servants, privies, related companies, successors and assigns, and all persons acting in concert, participation or combination with Defendant Bulova do Brasilare preliminarily enjoined from (a) using the Bulova mark in Defendant's own name, (b) using the Bulova mark in the name of the related company Bulova Universal, Ltda., (c) using the Bulova mark in its domain name "bulova.com.br," and (d) using the Bulova mark in any manner whatsoever, and from using any mark or name confusingly similar thereto. It is further

ORDERED, ADJUDGED and DE-CREED that Defendant Bulova do Brasil, its agents, employees, servants, privies, related companies, successors and assigns, and all persons acting in concert, participation or combination with Defendant Bulova do Brasil are preliminarily enjoined from using from Bulova other trademarks, including, but not limited to, BIFURCAT-ED DEVICE (Tuning Fork Symbol), AC-CUTRON, CARAVELLE, and MARINE STAR. It is further

ORDERED, ADJUDGED and DE-CREED that Defendant Bulova do Brasil, its agents, employees, servants, privies, related companies, successors and assigns, and all persons acting in concert, participation or combination with Defendant Bulova do Brasil are preliminarily enjoined from interfering with Plaintiff's rights to conduct business in Brazil, including, but not limited to, Plaintiff's rights to do business with other potential distributors. It is further

ORDERED, ADJUDGED and DE-CREED that Defendant Bulova do Brasil, its agents, employees, servants, privies, related companies, successors and assigns, and all persons acting in concert, participation or combination with Defendant Bulova do Brasil are preliminarily enjoined from advertising or marketing Bulova watches on, and from further using the website located at "bulova.com.br." It is further

ORDERED, ADJUDGED and DE-CREED that Defendant Bulova do Brasil, its agents, employees, servants, privies, related companies, successors and assigns, and all persons acting in concert, participation or combination with Defendant Bulova do Brasil are preliminarily enjoined from presenting themselves as an authorized distributor of Bulova watches; It is further

ORDERED, ADJUDGED and DE-CREED that Defendant Bulova do Brasil, its agents, employees, servants, privies, related companies, successors and assigns, and all persons acting in concert, participation or combination with Defendant are preliminarily enjoined from attempting to register any Bulova trademark or any names confusingly similar to any Bulova trademark. It is further

ORDERED, ADJUDGED and DE-CREED that Defendant Bulova do Brasil, its agents, employees, servant, privies, related companies, successors and assigns, and all persons acting in concert, participation or combination with Defendant Bulova do Brasil are preliminarily enjoined from attempts to acquire, produce, manufacture, sell or transfer Bulova watches or subcontract such activity. It is further

ORDERED, ADJUDGED and DE-CREED that Defendant shall change its corporate name to a name that does not incorporate the Bulova mark. It is further

ORDERED, ADJUDGED and DE-CREED that pursuant to Fed.R.Civ.P. 65(c) Plaintiff Bulova shall post an injunction bond as security before this Order takes effect. Parties shall file within five (5) days of the date of this Order stating their respective positions regarding the proper amount of the injunction bond. The Court will determine and order a proper sum for an injunction bond. This injunction shall become effective upon the filing, by Plaintiff Bulova, of the bond set by order of this Court with the Clerk of this Court.