**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| BLUETOOTH SIG INC., a Delaware corporation,<br><br>*Plaintiff-Appellee*,<br><br>v.<br><br>FCA US LLC, a Delaware limited liability company,<br><br>*Defendant-Appellant*. | No. 21-35561<br><br>D.C. No. 2:18-cv-01493-RAJ<br><br>OPINION |

Appeal from the United States District Court
for the Western District of Washington
Richard A. Jones, District Judge, Presiding

Argued and Submitted March 10, 2022
Seattle, Washington

Filed April 6, 2022

Before: Jacqueline H. Nguyen, Eric D. Miller, and
Patrick J. Bumatay, Circuit Judges.

Per Curiam Opinion

# SUMMARY[*]

## Trademark

Vacating the district court's partial summary judgment in favor of the plaintiff and remanding in an action under the Lanham Act, the panel held that the first sale doctrine applies when a trademarked product has been incorporated in a new product.

Bluetooth SIG Inc. ("the SIG"), a nonprofit that administers standards for short-range wireless technology, owns "Bluetooth" marks. To use any of these marks, a product manufacturer must join the SIG, execute a licensing agreement, submit declarations of compliance, and pay fees. Manufacturers of technological components are subject to testing requirements, but end product manufacturers may not need further testing if they incorporate a previously qualified product. The SIG brought trademark claims against FCA US LLC, which makes cars that contain Bluetooth-equipped head units that are manufactured by third-party suppliers and have been qualified by the SIG. FCA uses the SIG's marks on its head units and in product publications.

Under the first sale doctrine, the right of a producer to control the distribution of its trademarked product does not extend beyond the first sale of the product, and trademark rights are "exhausted" as to a given item upon the first authorized sale of that item. Thus, a purchaser who does no more than stock, display, and resell a producer's product under the producer's trademark violates no right conferred

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

upon the producer by the Lanham Act. The panel held that the first sale doctrine also applies when a mark is used to refer to a component incorporated into a new end product, so long as the seller adequately discloses how the trademarked product was incorporated. The panel remanded for the district court to address the fact-intensive issue whether FCA adequately disclosed its relationship with, and qualification to use, Bluetooth technology.

## COUNSEL

Judith A. Powell (argued), Charles H. Hooker III, Kilpatrick Townsend & Stockton LLP, Atlanta, Georgia; for Defendant-Appellant.

Peter J. Willsey (argued) and Vincent Badolato, Brown Rudnick LLP, Washington, D.C.; Jessica T. Lu, Melanie Dahl Burke, and Stephanie P. Calnan, Brown Rudnick LLP, Boston, Massachusetts; for Plaintiff-Appellee.

## OPINION

PER CURIAM:

This interlocutory appeal concerns the scope of the first sale doctrine in trademark law. Defendant-appellant FCA US LLC invoked the first sale doctrine as a defense to trademark claims asserted against it by plaintiff-appellee Bluetooth SIG Inc. ("the SIG"). After granting summary judgment for the SIG on the first sale issue, the district court certified the following question to us: does the first sale doctrine apply "when a trademarked product has been incorporated in a new product?" We answer "yes," and we

accordingly vacate the district court's summary judgment and remand for further proceedings.

## I

The SIG is a nonprofit that administers standards for short-range wireless technology. The SIG owns the word mark, "Bluetooth," the design mark ✇, and the composite ✇Bluetooth.[1]

To use any of these marks, a product manufacturer must join the SIG, execute a licensing agreement, submit declarations of compliance, and pay fees. Manufacturers of technological components are subject to testing requirements, but end product manufacturers may not need further testing if they incorporate a previously qualified product.

FCA makes cars under the brands Fiat, Chrysler, Dodge, Jeep, and Ram. FCA vehicles contain Bluetooth-equipped head units. Those head units are manufactured by third-party suppliers and have been qualified by the SIG, but FCA has not taken the further steps required by the SIG to qualify the Bluetooth capabilities of its cars. FCA uses the SIG's marks on its head units and in product publications.

The SIG brought trademark claims against FCA, and FCA asserted numerous defenses, including under the first sale doctrine. Ruling on cross-motions for summary judgment, the district court found triable issues on whether

---

[1] The word and composite are certification marks, which are "owned by one person and used by others in connection with their goods and services to certify quality, regional or other origin." *McCarthy on Trademarks and Unfair Competition* § 19:91 (5th ed. 2022).

(1) the Bluetooth word mark is generic, (2) there was a likelihood of confusion under the nominative fair use doctrine, (3) the SIG had abandoned its marks in the automotive industry through naked licensing, and (4) laches applied.  The district court granted partial summary judgment for the SIG on the first sale issue.  The district court reasoned that the first sale doctrine was inapplicable because FCA's conduct went beyond "stocking, displaying, and reselling a producer's product."

After vacating a trial date set in September 2020 due to the COVID-19 pandemic, the district court certified for interlocutory appeal whether the first sale doctrine applies "when a trademarked product has been incorporated into a new product."  A motions panel of this court granted FCA's petition for interlocutory appeal.  The district court then stayed proceedings pending resolution of this appeal.  We have jurisdiction under 28 U.S.C. § 1292(b).

## II

Under the first sale doctrine, "with certain well-defined exceptions, the right of a producer to control the distribution of its trademarked product does not extend beyond the first sale of the product." *Sebastian Int'l, Inc. v. Longs Drug Stores Corp.*, 53 F.3d 1073, 1074 (9th Cir. 1995) (per curiam).  "Trademark rights are 'exhausted' as to a given item upon the first authorized sale of that item." *McCarthy on Trademarks and Unfair Competition* § 25:41.

The district court's narrow view of the first sale doctrine was based on our statement in *Sebastian* that "[i]t is the essence of the 'first sale' doctrine that a purchaser who does no more than stock, display, and resell a producer's product under the producer's trademark violates no right conferred upon the producer by the Lanham Act."  53 F.3d at 1076.

*Sebastian* never purported to articulate the outer bounds of the first sale doctrine. It simply captured that the unauthorized resale of genuine goods presents an easy case for protecting a downstream seller. *See id.* (explaining that "[w]hen a purchaser resells a trademarked article under the producer's trademark, and nothing more, there is no actionable misrepresentation under the statute.").

Binding precedent extends the first sale doctrine beyond what *Sebastian* described as the doctrine's "essence." The first sale doctrine in trademark law derives from *Prestonettes, Inc. v. Coty*, 264 U.S. 359 (1924). *See Au-Tomotive Gold Inc. v. Volkswagen of Am., Inc.*, 603 F.3d 1133, 1136 (9th Cir. 2010). *Prestonettes* itself applied the first sale doctrine to conduct exceeding the resale of genuine goods.

In *Prestonettes*, the defendant was a cosmetics manufacturer that purchased genuine powder manufactured by the plaintiff, and then "subject[ed] it to pressure, add[ed] a binder to give it coherence and s[old] the compact in a metal case." 264 U.S. at 366. The Supreme Court held that trademark law did not prohibit the defendant from using the plaintiff's mark "collaterally, not to indicate the goods, but to say that the trade-marked product is a constituent in the article now offered as new and changed." *Id.* at 369. So long as the public was "adequately informed" who modified the powder, the Court reasoned, the public was "likely to find it out" if the defendant's process degraded the quality of the plaintiff's powder. *Id.*

Following *Prestonettes*, we applied the first sale doctrine to a retailer's repackaging of a manufacturer's trademarked goods. In *Enesco Corp. v. Price/Costco Inc.*, we held that the first sale doctrine protected a retailer that resold porcelain dolls in allegedly inadequate packaging to the

extent the repackaging was disclosed.  146 F.3d 1083, 1086–87 (9th Cir. 1998).  We explained that "[i]f the public were adequately informed that Price/Costco repackaged the figurines and the figurines were subsequently chipped, the public would not likely be confused as to the cause of the chipping."  *Id.* at 1087 (citing *Prestonettes*, 264 U.S. at 369).

Under *Prestonettes* and *Enesco*, the first sale doctrine applies when a mark is used to refer to a component incorporated into a new end product.[2]  Both *Prestonettes* and *Enesco* focused on a seller's disclosure of how a trademarked product was incorporated and explained that the first sale doctrine places limits on a seller's liability to the extent that adequate disclosures are made.  *See Prestonettes*, 264 U.S. at 368 (explaining that a trademark "does not confer a right to prohibit the use of the word or words" and cannot be used "to prevent its being used to tell the truth"); *Enesco*, 146 F.3d at 1086–87 (holding that the first sale doctrine did not apply to the extent the product manufacturer sought to compel disclosure of how the product was repackaged but did apply to the extent further relief was sought); *see also Champion Spark Plug Co. v. Sanders*, 331 U.S. 125, 130 (1947) (citing *Prestonettes* and explaining that "[f]ull disclosure" of alterations to a

---

[2] In addition to precedent, that conclusion is supported by influential treatises.  *See McCarthy on Trademarks and Unfair Competition* § 25:35.50 ("[U]se of an ingredient trademark is proper so long as consumers are not confused or deceived into thinking that the maker of the ingredient is responsible for the nature or quality of the finished product."); *Callmann on Unfair Competition, Trademarks and Monopolies* § 22:51 (4th ed. 2021) ("[T]he seller of the finished product is allowed to use the supplier's mark to identify the source of such parts or materials. . . .  But the manufacturer of the new product or combination may not mislead the public regarding the extent of the new product composed of that ingredient. . . .").

manufacturer's product "gives the manufacturer all the protection to which he is entitled").  In addressing the role of disclosure at oral argument, the parties disagreed about whether FCA had adequately disclosed its relationship with, and qualification to use, Bluetooth technology.  Because the district court never reached this fact-intensive issue, we remand for the district court to address it in the first instance.

Relying on our statement in *Au-Tomotive Gold* that the first sale doctrine is "generally focused on the likelihood of confusion among consumers," 603 F.3d at 1136, the SIG also argues that summary judgment can be affirmed because the district court determined that a triable issue exists as to likelihood of confusion.  The first sale doctrine "accommodate[s] between [the] strong and potentially conflicting forces" of, on the one hand, protecting good will and preventing confusion, and on the other, "preserv[ing] an area for competition by limiting the producer's power to control the resale of its product." *Sebastian*, 53 F.3d at 1075. In the context of pure resales, that balance is easily struck because "confusion ordinarily does not exist when a genuine article bearing a true mark is sold."  *NEC Elecs. v. CAL Circuit Abco*, 810 F.2d 1506, 1509 (9th Cir. 1987).  But under *Prestonettes* and *Enesco*, in the context of incorporated products, how those conflicting purposes are reconciled will depend in some way on how a seller uses the mark of the incorporated product in connection with a new product.  While our jurisdiction is not strictly limited to the certified question, *see Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199, 205 (1996), the district court is better positioned to address these questions in the first

instance with the benefit of briefing and specific analysis of how FCA uses the SIG's marks.[3]

Accordingly, we **VACATE** the district court's grant of summary judgment to the SIG on the first sale issue and we **REMAND** for further proceedings.

---

[3] For the same reason, we decline to reach the other alternate ground on which the SIG asks us to affirm – the exceptions to the first sale doctrine. Because the district court concluded that the first sale doctrine was categorically inapplicable in the incorporation context, it never addressed the SIG's arguments on the exceptions. The district court may consider these arguments on remand.