ZORAN CORLUKA, Plaintiff-Appellant, v. BRIDGFORD FOODS OF ILLINOIS, INC., Defendant-Appellee.

First District (3rd Division)   No. 1—95—3116

Opinion filed September 30, 1996.

Robert S. Minetz and Sarah S. Hirsen, both of Chicago, for appellant.

Michael J. Hayes and Darren S. Cahr, both of Chicago, for appellee.

PRESIDING JUSTICE TULLY delivered the opinion of the court:
Plaintiff, Zoran Corluka, brought this action in the circuit court of Cook County against defendant, Bridgford Foods of Illinois, Inc. (hereinafter Bridgford), seeking to recover damages for a retaliatory discharge, breach of contract and promissory estoppel after plaintiff's employment was terminated. Defendant filed a motion to dismiss plaintiff's cause of action under section 2—619 of the Code of Civil Procedure (735 ILCS 5/2—619 (West 1994)) on the basis that the complaint was barred by the Illinois Human Rights Act (Act) (775 ILCS 5/1—101 et seq. (West 1994)). The circuit court granted defendant's motion to dismiss. It is from this judgment that plaintiff now appeals to this court pursuant to Supreme Court Rule 301 (155 Ill. 2d R. 301).

For the reasons that follow, we affirm in part and reverse in part and remand.

The facts pertaining to this appeal are as follows. Corluka was employed by Bridgford for eight years, beginning in July of 1986 to July of 1994. Bridgford had issued a "No Harassment Policy" on April 19, 1994, stating that it "would not tolerate harassment of [its] employees." Bridgford further emphasized, "rest assured that you will not be penalized in any way for reporting harassment concerning yourself or any other person. [Bridgford] will take immediate action to punish anyone who seeks reprisal as a consequence of harassment being reported."

On June of 1994, Corluka reported to Kathleen Mulligan, one of Bridgford's attorneys, that his supervisor, who was unidentified in the record, was committing acts of sexual harassment and other acts of misconduct. Subsequently, Bridgford demoted Corluka from his position as a supervisor, took away his facility keys, and informed him that he was no longer eligible to work overtime. Corluka was discharged on July 15, 1994. Subsequently, Corluka brought this suit, which was dismissed by the circuit court.

On appeal, plaintiff argues that the circuit court erred in dismissing his three-count complaint alleging causes of action for retaliatory discharge, breach of contract and promissory estoppel. Plaintiff submits that his causes of action are not preempted by the Act.

The purpose of a motion to dismiss under section 2—619 is to dispose of issues of law and easily proved issues of fact at the outset of a case. *Zedella v. Gibson*, 165 Ill. 2d 181, 185, 650 N.E.2d 1000 (1995). In ruling on a section 2—619 motion to dismiss, a court may consider pleadings, depositions and affidavits. *Zedella*, 165 Ill. 2d at 185. A reviewing court will determine the propriety of the granting of the motion to dismiss *de novo*. *Toombs v. City of Champaign*, 245 Ill. App. 3d 580, 583, 615 N.E.2d 50 (1993). The question on appeal is "whether the existence of a genuine issue of material fact should have precluded the dismissal or, absent such an issue of fact, whether dismissal is proper as a matter of law." *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 116-17, 619 N.E.2d 732 (1993). For the purposes of a motion to dismiss, we must accept as true all well-pleaded facts in a plaintiff's complaint and all inferences that can reasonably be drawn in his favor from those facts. *Geise v. Phoenix Co. of Chicago, Inc.*, 159 Ill. 2d 507, 510, 159 N.E.2d 507, citing *Kolegas v. Heftel Broadcasting Corp.*, 154 Ill. 2d 1, 9, 607 N.E.2d 201 (1992).

■ We begin by addressing count I, the retaliatory discharge. The common law tort of retaliatory discharge was first recognized in Illinois as a cause of action in *Kelsay v. Motorola, Inc.*, 74 Ill. 2d 172, 384 N.E.2d 353 (1978). A retaliatory discharge is a limited and nar-

row exception (*Wieseman v. Kienstra, Inc.*, 237 Ill. App. 3d 721, 604 N.E.2d 1126 (1992)) to the general rule that states that all employment is at will and that an employer may discharge an employee for any or no reason. *Spann v. Springfield Clinic*, 217 Ill. App. 3d 419, 577 N.E.2d 488 (1991). For a claim of retaliatory discharge to be valid, it must contain allegations that (1) the plaintiff was discharged, (2) the discharge was in retaliation for plaintiff's activities, and (3) the discharge violated a clear mandate of public policy. *Dudycz v. City of Chicago*, 206 Ill. App. 3d 128, 133, 563 N.E.2d 1122 (1990), citing *Hinthorn v. Roland's of Bloomington, Inc.*, 119 Ill. 2d 526, 529, 519 N.E.2d 909 (1988).

■ The Illinois Human Rights Act (775 ILCS 5/1—101 *et seq.* (West 1994)) became effective on July 1, 1980. Thus, a statutory retaliatory discharge cause of action came into existence. In its declaration of policy, the Act states that it is the public policy of Illinois to prevent sexual harassment in employment (775 ILCS 5/1—102(B) (West 1994)). The Act defines "sexual harassment" as "any unwelcome sexual advances or requests for sexual favors or any conduct of a sexual nature" such as conduct that "has the purpose or effect of substantially interfering with an individual's work performance or creating an intimidating, hostile or offensive working environment" (775 ILCS 5/2—101(E) (West 1994)). Under the Act:

"It is a civil rights violation for a person, or for two or more persons to conspire, to:

*** [r]etaliate against a person because he has opposed that which he or she reasonably and in good faith believes to be unlawful discrimination, sexual harassment in employment *** or because *he or she has made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing under this Act.*" (Emphasis added.) 775 ILCS 5/6—101(A) (West 1994).

Furthermore, the Act provides, in pertinent part, that "[e]xcept as otherwise provided by law, no court of this state shall have jurisdiction over the subject of an alleged civil rights violation other than as set forth in this [a]ct" (775 ILCS 5/8—111(C) (West 1994)). This act provides a means of redress for civil rights violations to the exclusion of common law retaliatory discharge actions (*Faulkner-King v. Department of Human Rights*, 225 Ill. App. 3d 784, 587 N.E.2d 599 (1992)), and, accordingly, a complainant must first file a charge of discrimination with the Illinois Department of Human Rights before seeking further redress.

■ In the instant case, plaintiff reported the sexual harassment carried on by a supervisor as was required by defendant's "No

Harassment" policy, even though plaintiff himself was not the object, or the victim, of his supervisor's alleged sexual harassment. Consequently, according to plaintiff, he was fired. Plaintiff believes that this constituted a retaliatory discharge. We agree and find that the Act covers such a retaliatory discharge action. We note that it is irrelevant whether the sexual harassment was directed at plaintiff or whether plaintiff merely reported the harassment. The Act defines retaliatory discharge as a violation of civil rights, and it is now the exclusive means for redress for a civil rights violation (775 ILCS 5/6—101(A) (West 1994)). Thus, we hold that the Act preempts the common law retaliatory discharge. Under these facts, the Act's jurisdictional bar was triggered. Plaintiff had to timely file his charge of discrimination with the Illinois Department of Human Rights. Accordingly, we affirm the circuit court's dismissal of count I as it is preempted by the Act.

As to count II, the breach of contract claim, plaintiff argues that the Act was not intended to preempt contract law. We agree.

Plaintiff in this case relied on defendant's harassment policy written in a memorandum dated April 19, 1994, which stated in pertinent part:

"It is the policy of our Company, that it will not tolerate harassment of our employees. The term 'harassment' includes, but is not limited to, *** conduct relating to an individual's race, color, sex, religion, national origin, citizenship, age or disability. 'Harassment' also includes sexual advances, requests for sexual favors, unwelcome or offensive touching, and other *** conduct of a sexual nature.

If you feel you are being harassed in any way by another employee *** you should make your feelings known immediately. You may report harassment to your supervisor[.]

*Rest assured that you will not be penalized in any way for reporting harassment concerning yourself or any other person. The Company will take immediate action to punish anyone who seeks reprisal as a consequence of harassment being reported.*

All harassment complaints will be thoroughly investigated, and when appropriate, corrective action including disciplinary action, will be taken. We consider harassment to be a major offense which can result in suspension or discharge of an offender. ***

*Above is the policy of Bridgford Foods Corporation and its subsidiaries.*" (Emphasis added.)

Plaintiff averred in his complaint that defendant's policy constituted a contract between the parties.

Whether a contract exists is a question of law. See *Robinson v. Christopher Greater Area Rural Health Planning Corp.*, 207 Ill. App.

3d 1030, 566 N.E.2d 768 (1991). A court may interpret the contract as a matter of law and make an appropriate ruling, including a dismissal under section 2—619 of the Code of Civil Procedure (735 ILCS 5/2—619 (West 1994)). See *Ragus Co. v. City of Chicago*, 257 Ill. App. 3d 308, 628 N.E.2d 999 (1993).

■ An employee handbook or other policy statement creates enforceable contractual rights provided the following requirements are satisfied: (1) the language of the policy statement must contain a promise clear enough that an employee would reasonably believe that an offer was made; (2) the statement must be disseminated to the employee in such a manner that the employee is aware of its contents and reasonably believes it to be an offer; and (3) the employee must accept the offer by commencing or continuing to work after learning of the policy statement. *Duldulao v. St. Mary of Nazareth Hospital Center*, 115 Ill. 2d 482, 489, 505 N.E.2d 314 (1987). The efficacy of plaintiff's appeal rests on the first requirement, *i.e.*, whether the April 19 memorandum and the employee manual contained a promise clear enough that plaintiff would reasonably believe that he should report incidents of harassment without being penalized in any way.

■ After carefully reviewing the memorandum, we conclude that it stated more than just a general policy or employer expectations. The memorandum pronounces that defendant would not tolerate any harassment, including sexual harassment, of any kind. It further stated that if an employee is being harassed, he should make his feelings known "immediately." Defendant specifically states that an employee "will not be penalized in any way for reporting harassment" and that defendant will take immediate corrective action after a thorough investigation. Defendant emphatically states that harassment is a major offense that can result in suspension or discharge of an offender. Clearly, this states a promise by defendant to end any harassment employees may experience. Defendant relies on the employees to report any incidents of harassment. The April 19 memorandum was distributed to all the employees. We believe it is reasonable for plaintiff to find an offer was made, an offer that was accepted. Plaintiff, relying on defendant's policy statement, carried out his contractual obligations by reporting incidents of sexual harassment. Accordingly, we find that the sexual harassment policy was a contractual right of plaintiff under *Duldulao*. That said, we must now turn to the question of whether such a breach of contract claim is precluded by the Act.

■ While both the contractual and retaliatory discharge claims may rise from the same core of operative facts, a breach of contract

claim is a separate and distinct claim from that of retaliatory discharge, whose genesis is in tort law. We read nothing in the Act or case law which suggests that it was meant to preempt contract law. Accordingly, we believe the circuit court erred in dismissing count II of plaintiff's claim. In so holding, we wish to emphasize that our decision here is anchored on the fact that defendant had a very explicit policy statement that rose to the level of contract under *Duldulao*. It still remains to be determined by the trier of fact whether defendant actually breached the contract by discharging plaintiff.

In light of our disposition of the last issue, we need not address plaintiff's promissory estoppel claim since a contract was found.

For the foregoing reasons, we affirm in part and reverse in part the judgment of the circuit court of Cook County and remand for further proceedings not inconsistent with the views contained herein.

Affirmed in part; reversed in part and remanded for further proceedings.

CERDA and GALLAGHER, JJ., concur.