**D 56, INC., f/k/a Department
56, Inc., Plaintiff,**

v.

**BERRY'S INC., Jeffrey A. Berry,
and "John Doe" Companies
1–10, Defendants.**

No. 95 C 5992.

United States District Court,
N.D. Illinois,
Eastern Division.

Jan. 14, 1997.

Barry Levenstam, Jodi K. Rosen, Jenner & Block, Chicago, IL, Richard D. Emery, Richard D. Emery, P.C., New York City, for D 56, Inc.

Avrum Sidney Katz, Robert Mark Halligan, John L. Ambrogi, Welsh & Katz, Ltd., Chicago, IL, John M. O'Halloran, Coleman & O'Halloran, Chicago, IL, for Berry's, Inc. and Jeffrey A. Berry.

## MEMORANDUM OPINION AND ORDER

COAR, District Judge.

Plaintiff, D 56, Inc., a manufacturer and distributor of various porcelain and ceramic figures and other accessories, brought suit against Berry's Inc. a/k/a Berry's World ("Berry's World"), a retailer of various gift items, Jeffrey Berry ("Berry"), the proprietor of Berry's World, and John Doe Companies 1–10 ("Doe Companies"), various authorized dealers of plaintiff. Count I of the complaint alleges Tortious Interference with Contractual Relations by Berry's World and Berry (hereinafter the "Defendants"). Count II alleges Tortious Interference with Prospective Economic Advantage by Berry's World and Berry. Count III alleges Breach of Contract by the Doe Companies. Counts IV and V allege violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505 et seq., and the Illinois Deceptive Trade Practices Act, 815 ILCS 510 et seq., by Berry's World and Berry. Count VI alleges trademark infringement in violation of the Lanham Act, 15 U.S.C. §§ 1051 et seq., by Berry's World and Berry. Count VII alleges a False Designation of Origin and Sponsorship Affiliation in violation of the Lanham Act, 15 U.S.C. § 1125(a), by Berry's World and Berry. Currently pending is defendants motion for summary judgment on Counts I, II, IV, V, VI, and VII.

### Background

Plaintiff D 56, Inc. (hereinafter "Plaintiff") is a Minnesota corporation engaged in the business of producing, distributing, and marketing high-quality model products. (Defendants' Local Rule 12(M) Statement ("12(M)") ¶¶ 1–2). Berry's World is an Illinois corporation engaged in the retail business of selling various gift items that are similar in nature to those sold by Plaintiff. (Id. at ¶¶ 3–4). Berry is an Illinois resident and the president, treasurer, chief executive, and major shareholder of Berry's World. (Id. at ¶ 5; Complaint ("Compl.") at ¶ 6). Berry's World is not, and has never been, an authorized dealer of plaintiff. (Compl. at ¶ 18). The Doe Companies are unknown authorized dealers of plaintiff who are engaged in the business of selling plaintiff's products at retail. (Id. at ¶ 7).

Plaintiff manufactures uniquely-designed, finely-crafted porcelain and ceramic "house" and "village" pieces, figurines, and other accessories (hereinafter "Collections"). (Plaintiff's Local Rule 12(N) Statement ("12(N)") ¶ 31). The Collections are marketed and sold under trademarks registered to plaintiff (the "Marks").[1] (Id.). Plaintiff markets the Collections exclusively through authorized dealers, which are independent retail sales outlets carefully chosen by plaintiff to act as exclusive retail sellers. (Id. at ¶¶ 38–39). These retail stores must meet certain criteria to qualify as an authorized dealer-criteria which are designed to enhance plaintiff's reputation for quality. (Id. at ¶ 40). Plaintiff has a policy and long-standing practice of selling the Collections only to its authorized

---

1. The Marks include: "Department 56," "Dept. 56," "Heritage Village Collection," "Dickens Village Collection," "Snow Village Series," "Snowbabies," and "Snowbunnies." (12(N) ¶ 31 n. 1).

dealers. (*Id.* at ¶ 39). This policy is designed to ensure that the Collections purchased by consumers will be authentic and will be supported by superior product-related services. (*Id.* at ¶¶ 43–44). Plaintiff has developed a franchise for the Collections in the marketplace by selling them exclusively through authorized dealers. (Compl. at ¶ 12).

Each authorized dealer signs an Authorized Dealer Policy (the "Policy") in which the dealer agrees to (1) resell plaintiff's Collections at retail, and (2) refrain from transshipping the Collections to other retailers, wholesalers, or authorized dealers without plaintiff's express written permission. (*Id.* at ¶¶ 40–41, 52, 63–65; Defendants' Memorandum in Support of Motion for Summary Judgment ("Def.Memo.") Ex. B). The Policy confers authorized dealer status upon the signatory in exchange for compliance with the Policy's terms. (*Id.* at ¶¶ 47, 51–52, 63). Each Policy bears plaintiff's trademark and includes the following provision: "Transhipment of Department 56, Inc. products to another business or location ... is not permitted unless pre-approved in writing by Department 56, Inc. Office of National Sales Director." (*Id.* at ¶¶ 42, 52; Def. Memo. Ex. B). A subsequent provision asserts, "[A dealer's] account cannot be transferred to another owner, investor or business (by total or partial sale of assets or equity or otherwise) or applied to any location ... without written approval of Department 56, Inc., Office of National Sales Director." (*Id.*).

Berry's World has offered for sale at retail Plaintiff's Collections since, at least, December, 1994. (12(M) ¶ 10). Berry's World purchased the Collections from the Doe Companies, who are authorized dealers in plaintiff's Collections. (12(N) ¶¶ 142–430). The Doe Companies neither sought nor received plaintiff's prior written consent to transsship plaintiff's Collections to Berry's World. Defendants deny that they had any knowledge of plaintiff's relationship with the Doe Companies prior to the commencement of this action. (12(M) ¶ 13). Defendants further deny any knowledge of any agreement between plaintiff and the Doe Companies against transhipment of the Collections. (12(M) ¶ 16).

Berry's World receives a large portion of its Collections inventory from Class Act, an authorized dealer in Lake Zurich, Illinois. (12(M) ¶ 6). Berry's World has regularly purchased the Collections from Class Act since early 1994. (12(M) ¶ 10). Defendants deny that they had any knowledge of plaintiff's contractual relationship with Class Act when they began to purchase the Collections from Class Act. (12(M) ¶ 11). Defendants further claim that Class Act solicited Berry to purchase the Collections as early as 1993. (12(M) ¶ 9).

Plaintiff maintains that Berry has consistently misrepresented itself as an authorized dealer of the Collections to other authorized dealers in order to purchase the Collections. (12(N) ¶¶ 129–35). Several authorized dealers have testified that defendants solicited purchases of the Collections and misrepresented Berry's World as an authorized dealer. (12(N) ¶¶ 104, 129–35). The Defendants deny these allegations. (12(M) ¶¶ 23, 29).

In early 1994, plaintiff instituted a widely publicized reward program under which $ 1000 was promised to anyone who reported the transhipment of D56 products. (12(N) ¶¶ 101–02; Weiser Aff. ¶ 36 & Ex. 3). Berry denies any knowledge of such a reward campaign. (Def. Reply to (12(N) 3b ¶ 101)). That same year, Berry's World's membership with the National Association of Limited Edition Dealers ("NALED") was suspended. (12(N) ¶ 108; Berry Depo. 344–46, 349–51). Berry believes that the suspension was based on an order it placed for D56 products with an authorized dealer. (*Id.*). NALED's newsletter, which defendants had in their possession during the relevant period, contained express admonitions against transhipment of products subject to no transhipment provisions, and threatened offenders with termination of their NALED membership. (*Id.* at ¶ 126). In addition, the newsletter contained listings of product sales by authorized dealers and explicitly warned that, "YOU MUST BE A D56 DEPT. 56 DEALER" to purchase such products. (*Id.* at ¶ 127). Berry expressed awareness of the use of agreements against transhipment

within the collectibles industry in his deposition testimony.[2] (Berry Depo. pp. 145–46).

On December 21, 1994, plaintiff's counsel, David Weiser (Weiser), sent defendants a letter informing them of the contractual relationship between plaintiff and the Doe Companies and the alleged restriction on transhipment of the Collections. (12(M) ¶ 17; Def. Memo. Ex. D). Berry called Weiser shortly after receiving the letter and requested a copy of the alleged agreement. (12(M) ¶ 18). Weiser agreed to send Berry a copy of the agreement, but never did. (12(M) ¶ 19).

Berry's World has made, and continues to make use of plaintiff's and its authorized dealers' marketing materials, including store display signs. On two occasions, defendants distributed plaintiff's trademarked pamphlets and posters as a promotional tool. (12(N) 111, 114). Such materials are typically used by authorized dealers only. (*Id.* at ¶ 112). Defendants also display signs bearing plaintiff's trademark in Berry's World and on its storefront and prominently feature the Collections in the store using signs bearing plaintiff's trademark. (12(N) ¶¶ 116–19). For example, defendants have situated a 20–inch–by–10–inch cardboard sign advertising one of plaintiff's promotions at the display case for the Collections at Berry's World. In addition, defendants use plaintiff's trademarked materials in their advertising. (*Id.* at ¶¶ 120–21). Defendants maintain that plaintiff's trademark has been used for informative purposes only. (12(M) ¶ 30).

### Legal Standard for Summary Judgment

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, admissions and affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56; *Hedberg v. Indiana Bell Telephone Co., Inc.,* 47 F.3d 928 (7th Cir.1995); *Wainwright Bank & Trust Co. v. Railroadmens Fed. Sav. & Loan Ass'n of Indianapo-*

*lis,* 806 F.2d 146, 149 (7th Cir.1986). The movant has the burden of establishing that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The primary inquiry is whether the evidence presents a sufficient disagreement to require a trial, or whether it is so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). If the moving party meets this burden, the nonmoving party must then respond by setting forth specific facts which demonstrate the existence of a genuine issue for trial. Fed.R.Civ.P. 56(e); *Posey v. Skyline Corp.,* 702 F.2d 102, 105 (7th Cir.), cert. denied, 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983); *see Curtis v. Bembenek,* 48 F.3d 281 (7th Cir.1995). All reasonable inferences from the record are to be drawn in favor of the nonmoving party. *Johnson v. Runyon et al.,* 47 F.3d 911 (7th Cir.1995); *Donovan v. City of Milwaukee,* 17 F.3d 944, 947 (7th Cir.1994).

### I. COUNTS I and II: TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS and PROSPECTIVE ECONOMIC ADVANTAGE

■ In Counts I and II of the complaint, plaintiff alleges that Berry's World and Berry tortiously interfered with the contractual relations and prospective economic advantage between plaintiff and the Doe Companies by deliberately inducing the Doe Companies to breach their agreements not to transship Plaintiff's Collections. To maintain an action for tortious interference with a contractual relationship, a plaintiff must plead five (5) elements: (1) the existence of a valid and enforceable contract between plaintiff and another; (2) defendant's awareness of the contractual relationship; (3) defendant's intentional and unjustified inducement of a breach of the contract; (4) a subsequent breach by the other, caused by defendant's wrongful conduct; and (5) damages. *Schott v. Glover,* 109 Ill.App.3d 230,

---

**2.** Plaintiff also offers evidence that Berry is presently a party to contracts containing such provisions. (Berry Depo. pp. 146–47, 540–41, 548; Pl.Ex. G). However, plaintiff failed to establish

that Berry had entered into these agreements during the relevant time period. Such evidence is thus irrelevant to the Court's analysis.

234, 64 Ill.Dec. 824, 827, 440 N.E.2d 376, 379 (1982). To state a cause of action for tortious interference with prospective economic advantage, plaintiff must plead four (4) elements: (1) the existence of a valid business relationship or expectancy; (2) knowledge of the relationship or expectancy on the part of the interferer; (3) an intentional and malicious interference inducing or causing a breach or termination of the relationship or expectancy; (4) resultant damage to the party whose relationship has been disrupted. *IK Corp. v. One Financial Place Partnership*, 200 Ill.App.3d 802, 818, 146 Ill.Dec. 198, 209, 558 N.E.2d 161, 172, *app. denied*, 135 Ill.2d 556, 151 Ill.Dec. 383, 564 N.E.2d 838 (1990) (quoting *Ancraft Products Co. v. Universal Oil Products, Co.*, 84 Ill.App.3d 836, 844, 40 Ill.Dec. 70, 76, 405 N.E.2d 1162, 1168 (1980)); *see also Delloma v. Consolidation Coal Co.*, 996 F.2d 168, 170–71 (7th Cir.1993) (citing *Fellhauer v. City of Geneva*, 142 Ill.2d 495, 511, 154 Ill.Dec. 649, 657, 568 N.E.2d 870, 878 (1991)). The two torts are similar in that they "both recognize that a person's business relations are a form of property entitled to protection from unjustified tampering by others." *Fishman v. Estate of Wirtz*, 807 F.2d 520, 546 (7th Cir. 1986).

Defendants argue that the Court should grant summary judgment on these counts for five (5) reasons: First, plaintiff fails to establish the existence of valid and enforceable contract(s). Second, plaintiff has failed to demonstrate that there was an actual breach of any alleged contract(s). Third, defendants were not aware of the existence of the alleged contract(s) during the relevant period. Fourth, any alleged interference by defendants does not constitute intentional inducement. Fifth, plaintiff has not incurred any damages resulting from the alleged interference. (Def.Memo. pp. 1–8). Additionally, defendants argue that the prospective economic advantage claim should be dismissed for several independent reasons. (*Id.* at 9–14). The Court addresses each of these contentions seriatim.

### A. Intentional Interference with Contractual Relations

#### 1. Valid and Enforceable Contract

■ In its decision denying defendants' motion to dismiss, this Court recognized that there are two separate alleged agreements; one not to transship the goods (for which plaintiff granted the retailer the status of "authorized dealer"), and one for the purchase of the Collections. (Memorandum Opinion and Order, May 7, 1996). The alleged contract upon which plaintiff's claim for tortious interference with contractual relations is based is the Authorized Snowbabies Dealer Policy (the "Policy"). (Def.Memo.Ex. B). Defendants argue that the Policy is not a valid enforceable contract because it lacks consideration. (*Id.* at 2–4). Specifically, defendants contend that the Policy does not obligate plaintiff to render any performance and is not signed by plaintiff. (*Id.*) Furthermore, defendants argue that any implied promise is illusory in light of plaintiff's express disclaimers. (*Id.* at 3–4). Plaintiff counters that the purpose of the agreement is to confer upon selected retailers the coveted status of an authorized dealer and to subject all sales of the Collections to Standard Terms and Conditions.[3] (Pl.Memo. p. 6). Plaintiff further claims that absent the Policy, it would have the right "(i) to designate—or refuse to designate—any retailer as its D56 Dealer, and to allow—or refuse to allow—a retailer to associate itself with plaintiff or to use plaintiff's Marks on its signs and advertising; (ii) to entertain—or refuse to entertain—orders for D56 Products from any retailer; (iii) to sell D56 Products on any terms it wishes—not merely the Standard Terms; and (iv) to deny a retailer the many benefits of D56 Dealer status, such as training, discounts, and promotional materials." (Pl.Memo. p. 7).

■ Contracts are bargained-for exchanges: "A contract, by ancient definition, is 'an agreement between competent parties, upon a consideration sufficient in law, to do or not do a particular thing' ... ". *Steinberg*

---

**3.** The Policy reads in relevant part, "[A]ll orders are subject to Department 56, Inc.'s Standard Terms and Conditions (as they may be amended or supplemented by Department 56, Inc. from time to time), including audit and final allocation by Department 56, Inc.".

*v. Chicago Medical School,* 69 Ill.2d 320, 329, 331, 13 Ill.Dec. 699, 371 N.E.2d 634 (1977); *see also, Wagner Excello Foods v. Fearn International, Inc.,* 235 Ill.App.3d 224, 229, 176 Ill.Dec. 258, 601 N.E.2d 956 (1992) ("To be enforceable, a contract must show a manifestation of agreement between parties."). Consideration consists either of some "right, interest, profit or benefit accruing to one party, or some forbearance, detriment, loss of responsibility given, suffered or undertaken by the other." *White v. Village of Homewood,* 256 Ill.App.3d 354, 356–57, 195 Ill.Dec. 152, 154, 628 N.E.2d 616, 618 (1993) citing *De Fontaine v. Passalino,* 222 Ill.App.3d 1018, 1028, 165 Ill.Dec. 499, 584 N.E.2d 933 (1991). Whether a contract exists is a question of law. *Corluka v. Bridgford Foods of Illinois, Inc.,* 284 Ill.App.3d 190, 219 Ill.Dec. 647, 651, 671 N.E.2d 814, 818 (1996); *see also Robinson v. Christopher Greater Area Rural Health Planning Corp.,* 207 Ill.App.3d 1030, 152 Ill.Dec. 891, 566 N.E.2d 768 (1991). This Court finds that the Policy constitutes a valid, enforceable agreement supported by adequate consideration.

Under the Policy, which is signed by each retailer, plaintiff confers upon such retailers the status of authorized dealer in exchange for their compliance with the provisions of the Policy.[4] (12(N) ¶¶ 47, 51–52, 63). This exchange—the status for the compliance—is sufficient consideration to create a valid, enforceable contract. Although the Policy contains precatory language[5] and emphasizes that plaintiff has complete discretion in con-

ducting business with the retailer,[6] there is still a binding commitment on the part of both plaintiff and the retailers since a covenant of good faith and fair dealing is implied in every contract under Illinois law. Ill.Rev. Stat.1991, ch. 26, par. 1–203 ("Every contract or duty within this Act imposes an obligation of good faith in its performance or enforcement."); *Agribank v. Whitlock,* 251 Ill.App.3d 299, 190 Ill.Dec. 514, 621 N.E.2d 967 (1993). This duty of good faith is defined under Illinois' version of the Uniform Commercial Code as "honesty in fact with respect to the transaction in question." Ill.Rev.Stat. 1991, ch. 26, par. 1–201(19); *Hugo v. Tomaszewski,* 155 Ill.App.3d 906, 108 Ill.Dec. 562, 508 N.E.2d 1139 (1987); *Carrico v. Delp,* 141 Ill.App.3d 684, 95 Ill.Dec. 880, 490 N.E.2d 972 (1986); *Osten v. Shah,* 104 Ill. App.3d 784, 60 Ill.Dec. 497, 433 N.E.2d 294 (1982). Indeed, contractual discretion does not discharge a party's duty to act with good cause and commercial reasonability. *Dayan v. McDonald's Corp.,* 125 Ill.App.3d 972, 991, 81 Ill.Dec. 156, 170, 466 N.E.2d 958, 972 (1984) ("[A] party vested with contractual discretion must exercise that discretion reasonably and with proper motive, and may not do so arbitrarily."). Furthermore, that plaintiff did not sign the Policy is immaterial where plaintiff later reaped the benefits of its provisions and the Policy bears plaintiff's logo and other insignia indicating plaintiff's intent to be bound. *Steinberg,* 69 Ill.2d at 331, 13 Ill.Dec. at 705, 371 N.E.2d at 640 (1977) ("It suffices that the conduct of the contracting parties indicates an agreement to

4. The Policy states, "The undersigned ... understands that any violation hereof or of Department 56, Inc.'s Standard Terms and Conditions may result on the immediate loss of *status as an Authorized Snowbabies Dealer.* The undersigned further understands that its account and product allocation with Department 56, Inc. *as an Authorized Snowbabies Dealer* cannot be transferred to another ...". (Def.Ex. B).

5. For example, in the first paragraph of the Policy, Department 56 *"encourages* all Authorized Snowbabies dealers to observe" certain policies. (Def. Ex. B. (emphasis added)). With respect to transhipment the Policy states, in part, that "Department 56, Inc. products should be offered for re-sale directly to end-consumers only. Department 56, Inc. Products should not be sold to anyone for the purposes of re-sale or further distribution." However, the policy goes on to

explicitly proscribe such conduct by stating that "[t]ranshipment of Department 56, Inc. products to an other business or location (regardless of ownership) *is not permitted unless pre-approved in writing* by Department 56, Inc. Office of National Sales Director." Thus, it is clear that any transhipment of the Collections is in clear violation of the Policy.

6. The Policy reads in pertinent part, "The decision to open or maintain an Authorized Snowbabies Dealer account and the decision to accept any orders is in *the sole and complete discretion of Department 56, Inc. Headquarters* .... Department 56, Inc. ... reserves the right to discontinue doing business with any dealer or limit the availability of one or more products to any dealer *at any time without notice for any reason."* (Def. Ex. B (emphasis added)).

the terms of the alleged contract."); *see also* Ill. Rev. Stat.1991, ch. 26, par. 1–201(39) (comment) ("The question always is whether the symbol was executed or adopted by the party with present intention to authenticate the writing.").

■ Finally, plaintiff's promise under the. Policy is not illusory. An illusory promise is one that "appears to be a promise, but on closer examination reveals that the promisor has not promised to do anything" or where the promisor's performance is optional. *W.E. Erickson Construction, Inc. v. Chicago Title Insurance Co.*, 266 Ill.App.3d 905, 908, 204 Ill.Dec. 431, 434, 641 N.E.2d 861, 864 (1994). If a promise is illusory, it is not valid consideration to support a contract. *See Mimica v. Area Interstate Trucking, Inc.*, 250 Ill.App.3d 423, 190 Ill.Dec. 67, 620 N.E.2d 1328 (1993). Here it is clear that plaintiff's promise under the Policy is to make the signatories authorized dealers of the Collections. Moreover, the parties subsequent conduct in compliance with the terms of the Policy indicates their intent to be legally bound. *Steinberg*, 69 Ill.2d at 331, 13 Ill.Dec. at 705, 371 N.E.2d at 640. Accordingly, this Court finds that the Policy is a valid, enforceable contract.

## 2. Breach

■ Defendants maintain that there was no breach of the Policy because the obligations of the Doe Companies were prefaced by precatory language and therefore not enforceable. (Def.Memo. p. 5). This argument is merely a restatement of defendants' previous argument against the validity of the contract. This Court will nonetheless address this contention separately.

The part of the Policy upon which Defendants most heavily rely for support of their argument reads, "Department 56, Inc. *encourages* all Authorized Snowbabies Dealers to observe the following policies". (*Id.* at Ex. B (emphasis added)). However, the Policy later states in unequivocal language that "[t]ranshipment of Department 56, Inc. products to another business or location ... is not permitted unless pre-approved in writing by Department 56, Inc. Office of National Sales Director." (*Id.*). A subsequent provision

further asserts, "[A retailer's] account cannot be transferred to another owner, investor or business (by total or partial sale of assets or equity or otherwise) or applied to any location.. without written approval of Department 56, Inc., Office of National Sales Director." (*Id.*). Thus, read in its entirety, the Policy clearly prohibits transhipment of the Collections despite the use of precatory language in the introductory paragraph.

Furthermore, the case at bar is distinguishable from *Serpe v. Williams*, 776 F.Supp. 1285 (N.D.Ill.1991), which Berry's World and Berry also cite in support of their proposition that there was no breach. In *Serpe*, an employer entered into a club membership contract with its employees which provided a signature line for spouses. (*Id.* at 1287). The spouses were not otherwise mentioned in the contract. (*Id.* at 1288). In subsequent communications to the employees, the employer encouraged the spouses to participate in various club activities. (*Id.* at 1287). The court found that the spouses' encouraged participation and signature on the contract gave them no rights thereunder as direct or third-party beneficiaries. (*Id.* at 1288–89). By contrast, the case at bar does not involve the doctrine of third party beneficiaries. Moreover, here the authorized dealers are express parties to the contract whose obligations, while prefaced by precatory language, clearly exact a commitment from them. Thus, having agreed under the Policy to refrain from transhipping the Collections, the Doe Companies clearly breached the agreement by supplying Berry with such goods.

## 3. Knowledge

■ Plaintiff alleges that defendants knew of its policy and long-standing practice to sell the Collections only to its authorized dealers and each authorized dealer's agreement not to transship plaintiff's collections to other retailers. (Pa.Memo. p. 12–14). Plaintiff contends that Berry's World and Berry were on specific notice and had specific knowledge of the existence of a valid agreement between plaintiff and its authorized dealers, including the Doe Companies, by virtue of a letter detailing such information which defen-

dants received in December 1994. (Pl.Memo. p. 13). The letter reads in relevant part,

The purpose of this letter is to put you on notice that Department 56 sells [the Collections] to our authorized dealers *only*, and that a provision in the relationship between each authorized dealer and Department 56 is that the authorized dealer is prohibited from re-selling or transshipping Department 56 products to another location or dealer without prior written consent. Your continued unauthorized acquisition of Department 56 products from any of our dealers would constitute inducement of those dealers to breach their contracts with Department 56 and wrongful interference in our business relationship with them.

(Def. Memo. Ex. D (emphasis in original)).

In addition, Plaintiff maintains that Berry's World and Berry had notice of the agreement against transhipment entered into by its authorized dealers by virtue of (1) defendants admitted familiarity with provisions against transhipment in similar contracts, (Berry Depo. pp. 145–46); (2) plaintiff's widely publicized reward offer for information on the illegal transhipment of its products, (12(N) ¶¶ 101–02; Weiser Aff. ¶ 36 & Ex. 3); (3) specific warnings against transhipment of D56 products printed in NALED dealer trade publications, (12(N) ¶ 126); (5) NALED's suspension of Berry's World's membership allegedly as a result of Berry's World's attempt to obtain D56 products in violation of industry practice against transhipment, (*id.* at ¶ 108; Berry Depo. pp. 344–46, 349–51); and (6) explicit warnings that D56 products were available only to authorized dealers contained in NALED newsletter's product listings. (12(N) ¶ 127). Moreover, there is sufficient evidence that Berry falsely represented himself and Berry's World as authorized dealers of D56 products when purchasing such products which indicates that Berry knew of the proscription against transhipment. (*Id.* at i¶¶ 104, 129–35).

Defendants counter that they did not have specific or constructive knowledge of plaintiff's agreement with its authorized dealers or its prohibition against transhipment prior to the commencement of this action. (Def.Memo.6–7). Specifically, defendants argue that Berry "had no duty to accept [plaintiff's attorney's] bald assertions" regarding plaintiff's contractual relations with authorized dealers since neither plaintiff nor plaintiff's attorney sent a copy of any agreements to defendants in response to Berry's verbal demand for such proof. (Def.Memo. p. 7). This court finds that, regardless of whether defendants received a copy of the agreement or their subjective belief regarding the effect of such an agreement, the December 1994 letter put Berry's World and Berry on notice that a valid contract existed between plaintiff and its authorized dealers. Restatement (2d) Torts, § 766, comment i (defendant's subjective belief regarding the effect of the contract does not dispel defendant's knowledge of the contract). Moreover, taken as a whole, the notice letter and the other evidence of defendants' "constructive" knowledge would allow a reasonable jury to conclude that defendants knew of an agreement between plaintiff and Doe Companies, and that defendants knew the agreement prohibited the Doe Companies from transshipping the Collections to unauthorized dealers. It can also be reasonably inferred that defendants knew that the companies with which they were conducting business were Doe Companies. Thus, as this Court is obliged on summary judgment to make all reasonable inferences in favor of the nonmoving party, *Johnson v. Runyon et al.*, 47 F.3d 911 (7th Cir.1995); *Donovan v. City of Milwaukee*, 17 F.3d 944, 947 (7th Cir.1994), it finds that defendants have not carried their burden of proving that they did not have knowledge of the contractual relationship between plaintiff and the Doe companies.

### 4. *Intentional Inducement*

Plaintiff argue that defendants "intentionally and deliberately induced and continue to induce the Doe Companies to sell and transship plaintiff's Collections," in violation of the valid agreements between plaintiff and the Doe Companies, and without plaintiff's prior written consent. If a jury concludes that defendants knew that authorized dealers were prohibited from transshipping the Collections and finds the evidence that

defendants solicited sales from the Doe Companies is credible, it can reasonably conclude that defendants intentionally induced the Doe Companies. Moreover, plaintiff's evidence that defendants intentionally and unjustifiably breached the contract by misrepresenting themselves as authorized dealers is sufficient to support a conclusion that defendants interfered with a contractual relationship.

On the contrary, defendants allege that authorized dealers solicited them to purchase D56 products. Indeed, defendants maintain that one authorized dealer in particular, Class Act, "was predisposed and anxious to tranship." (Def.Memo. p. 8). They also allege that they purchased the Collections in response to advertisements placed by authorized dealers. (12(M) ¶ 14). In support of their claim, however, defendants offer only the self-serving affidavit of defendant Berry in which he alleges that such purchases "likely resulted from ... responding to advertisements." (Berry Depo. ¶ 4). Such testimony in the face of plaintiff's overwhelming counter evidence creates, at best, a genuine issue of material fact precluding summary judgment.

▋ As a last resort, defendants argue that even if a jury were to find that they intentionally induced Authorized Snowbabies Dealers to breach their agreements against transhipment such inducement was justified and, consequently, is not actionable. (Def.Memo.7). Defendants shoulder the burden of proving that their behavior was justified by the existence of a privilege. *Roy v. Coyne*, 259 Ill.App.3d 269, 283, 196 Ill.Dec. 859, 868, 630 N.E.2d 1024, 1033 (1994) ("[I]f the complaint may not fairly be said to introduce the existence of a recognized statutory or common law privilege ... it becomes the defendant's burden to plead and prove the privilege as an affirmative matter."). To establish that it acted with justification in an intentional interference with contract relations case, a defendant must prove that it "was acting to protect an interest which the law deems to be of equal or greater value than the plaintiff's contractual rights." *HPI Health Care Serv., Inc. v. Mount Vernon Hospital, Inc., et al.,* 131 Ill.2d 145, 156, 137

Ill.Dec. 19, 24, 545 N.E.2d 672, 677 (1989). Courts have recognized the duty hospital management companies owe to their hospitals to exercise business judgment in paying their hospitals' creditors, *id.* at 157, 137 Ill. Dec. at 24, 545 N.E.2d at 677, and the duty of corporate officers and directors to use their business judgment and discretion on behalf of their corporations as interests of greater value than a plaintiff's contractual rights. *Swager v. Couri,* 77 Ill.2d 173, 191, 32 Ill.Dec. 540, 395 N.E.2d 921 (1979). Here defendants do not present any argument or evidence that they were acting to protect an interest which the law deems to be of equal or greater value than the plaintiff's contractual rights. Accordingly, this Court finds that a reasonable jury could conclude that defendants intentionally, and without justification, induced the Doe Companies to breach the Policy.

## 5. *Damages*

▋ A plaintiff who prevails on a claim for tortious interference with contractual relations may recover damages in the form of "pecuniary loss from the benefits of the contract; actual harm to reputation, if they are reasonably to be expected to result from the interference; and consequential losses for which the interference is the legal cause." *Reuben H. Donnelley Corp. v. Brauer,* 275 Ill.App.3d 300, 313, 211 Ill.Dec. 779, 789, 655 N.E.2d 1162, 1172 (1995) (citations omitted). Plaintiff claims that it lost $ 76,000 in expected sales within the immediate vicinity of Berry's World in 1995; $ 43,000 in expected sales to its largest authorized dealer nearest to Berry's World; and $ 174,000 in diminished sales in Berry's World's immediate vicinity since 1994 resulting from an alleged devaluation of plaintiff's business good will and trademarks. (Pl.Memo. p. 23).

Defendants argue that plaintiff has not presented any evidence that it has incurred damages as a result of the alleged breach. (Def.Memo. pp. 5–9). Specifically, defendants maintain that plaintiff did not incur any damages because it received contract price for the Collections despite the fact that they were allegedly resold to an unauthorized dealer. (Def.Memo. p. 5). Further-

more, defendants contend that the evidence of damages presented by plaintiff cannot be linked to them. (Def.Memo. pp. 5–9).

Defendants correctly point out that other circuits have held that a plaintiff does not suffer pecuniary loss arising out of the transhipment of goods where the plaintiff received a profit from such sales. *H.L. Hayden Co. of New York, Inc. v. Siemens Medical Systems, Inc.*, 879 F.2d 1005, 1024 (2d Cir.1989); *see also Landmark Development Corp. v. Chambers Corp.*, 752 F.2d 369, 373 (9th Cir.1985). However, defendants misperceive the nature of damages that plaintiff alleges are attributable to this breach. The premise underlying plaintiff's theory of damages is that sales by Berry's World shifted consumer demand from authorized dealers thereby decreasing plaintiff's sales to such dealers. Thus, the damages which defendants characterize as pecuniary loss are more appropriately characterized as "consequential" damages. Whether plaintiff could establish this sort of damage is a question for the finder of fact at trial. At the very least, there is some evidence that sales were less than expected, Weiser Aff. ¶¶ 55–57 and Ex. 7, and thus is entitled to go forward even though there might be independent reasons for the decline in expected sales. The Court thus finds that defendants have failed to show that there is no genuine issue as to whether plaintiff incurred damages as a result of the alleged breach. Accordingly, summary judgment on count I is denied.

### B. *Interference with Prospective Economic Advantage*

Because plaintiff has terminated its business relationship with only one authorized dealer, Class Act, as a result of defendants' alleged interference, plaintiff has narrowed its claim for prospective economic advantage to its loss of sales to Class Act. (Pl.Memo. p. 19). Defendants assert several arguments in support of their motion for summary judgment on this count independent of those asserted with respect to the contractual relations claim.

First, Berry's World and Berry erroneously maintain that, in order to prevail on a claim for tortious interference with prospective economic advantage, plaintiff must demonstrate that Berry knew that by purchasing the Collections from Class Act he would interfere with plaintiff's future sales to Class Act. (*Id.* at 10–11). However, plaintiff is simply required to establish that Berry had knowledge of its expectancy to enter into a valid business relationship with Class Act. *Malatesta v. Leichter*, 186 Ill.App.3d 602, 619, 134 Ill.Dec. 422, 434, 542 N.E.2d 768, 780 (1989) (Illinois courts have not required knowledge of the nature of the relationship; knowledge of a business relationship is sufficient.). A jury can reasonably infer that Berry had knowledge of such an expectancy if it finds that Berry had knowledge of the ongoing contractual and business relationship between plaintiff and Class Act. As this Court acknowledged above, plaintiff has set forth sufficient evidence from which a jury could conclude that Berry knew of the contractual relationship that plaintiff had with its authorized dealers, including Class Act.

Second, defendants argue that a jury could not reasonably infer that Berry induced Class Act to breach its agreement with plaintiff by impersonating an authorized dealer since Berry's World allegedly paid Class Act sixty percent of the retail price of the Collection as opposed to the standard rate of fifty percent. (Def. Reply Memo. 9–10). Specifically, defendants assert that Class Act could not have believed that Berry's World was an authorized dealer since it was willing to purchase the Collections at above market rate. (*Id.* at 10). This argument fails since authorized dealers such as Class Act were prohibited from reselling the Collections to any entity including other authorized dealers. Furthermore, a jury can reasonably infer that defendants intentionally induced Class Act since plaintiff has presented sufficient evidence that Berry was aware of the proscription against transshipment.

Third, defendants contend that Berry's actions were justified in pursuit of legitimate business goals. In essence, defendants are asserting the affirmative defense of the competitor's privilege which allows a defendant

to divert business from a competitor when motivated to further its own business, and not solely by malice. *Soderlund Bros., Inc. v. Carrier Corp.*, 278 Ill.App.3d 606, 615, 215 Ill.Dec. 251, 258, 663 N.E.2d 1, 8 (1995). Fraud and deceit are among those "acts of competition, which are never privileged." *Id.* at 616, 215 Ill.Dec. at 258, 663 N.E.2d at 8. As discussed above, there is ample evidence to support the inference that Berry's World and Berry engaged in fraudulent and deceitful behavior to disrupt plaintiff's contractual relationship with Class Act by impersonating an authorized dealer. (*See* 12(N) ¶¶ 129–35). Thus, there is a genuine issue of material fact as to whether defendants are entitled to the affirmative defense of competitor's privilege.

Fourth, defendants argue that plaintiff will not incur any damages because Class Act has expressed a clear interest in maintaining a business relationship with plaintiff in spite of the breach. Defendants asserted the same argument in support of their motion for summary judgment on the contractual relations claim. Similarly, this Court finds that the fact that it was plaintiff's decision to terminate its business relationship with Class Act is inconsequential where the decision was based upon a breach of contract induced by defendants.

Finally, defendants argue that plaintiff has presented no evidence of its alleged damages arising from the loss of future sales to Class Act. (Def. Reply Memo. p. 11). While it is true that plaintiff's 12(N) statement and supporting memorandum are devoid of any reference to the specific damages incurred as a result of plaintiff's loss of future sales to Class Act, it can be reasonably inferred from the nature of plaintiff's contractual relationship with Class Act that plaintiff incurred damages as a result of the termination of that relationship. It will be plaintiff's burden at trial to prove these damages with specificity. At the summary judgment stage, it is defendants' burden to demonstrate that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). Defendants have not met this burden with respect to element of damages. Accord-

ingly, defendants' motion for summary judgment on count II is denied.

## II. COUNTS IV, V, VI and VII: TRADEMARK INFRINGEMENT

Counts IV, V, VI and VII of plaintiff's complaint are based upon allegations of trademark infringement. In Count IV, plaintiff alleges violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILKS. 505 *et seq.,* ("ICFDBPA"), against Berry's World and Berry. In Count V, plaintiff asserts a claim under the Illinois Deceptive Business Practices Act, 815 ILKS. 510 *et seq.,* ("IDTPA"), against Berry's World. In Counts VI and VII, plaintiff alleges violations of sections 32 and 43 of the Lanham Act in violation of 15 U.S.C. § 1051 *et seq,* and False Designation of Origin and Sponsorship Affiliation in violation of 15 U.S.C. § 1125(a), against Berry's World and Berry.

Defendants argue that summary judgment should be granted on these counts for two reasons: First, Berry's World only sells genuine goods. Second, there was no likelihood of confusion that Berry's World was an authorized dealer. Each of these arguments are addressed below.

### A. Sale of Genuine Goods

■ Defendants maintain that "it is not trademark infringement to use a mark informatively to identify genuine goods." (Def.Memo. p. 14). In *Sebastian Int'l, Inc. v. Longs Drug Stores Corp.,* 53 F.3d 1073 (9th Cir.1995), a case upon which defendants rely heavily, the Ninth Circuit held that "[w]hen a purchaser resells a trademarked article under the producer's trademark, *and nothing more,* there is no actionable misrepresentation under the statute." *Id.* at 1076 (emphasis added). However, the court in Sebastian expressly limited its holding to the mere stocking and reselling of trademarked products. *Id.* The court distinguished such acts from the use of the producer's trademark on display and in advertising, and the use of the producer's promotional literature. *Id.* Here it is undisputed that Berry's World and Berry used plaintiffs trademark and promotional materials in it advertising and displays. On

two occasions, defendants distributed plaintiff's trademarked pamphlets and posters as a promotional tool. (12(N) ¶¶ 111, 114). Such materials are typically used by authorized dealers only. (*Id.* at ¶ 112). Defendants also display signs bearing plaintiff's trademark in Berry's World and on its storefront and prominently feature the Collections in the store using signs bearing plaintiff's trademark. (12(N) ¶¶ 116–19). For example, defendants have situated a 20–inch–by–10–inch cardboard sign advertising one of plaintiff's promotions at the display case for the Collections at Berry's World. In addition, defendants use plaintiff's trademarked materials in its advertising. (*Id.* at ¶¶ 120–21). Thus, defendants' resale of plaintiff's genuine trademarked products does not shield them from charges of trademark infringement where they use plaintiff's trademark and promotional materials in its displays and advertising. *See Sebastian,* 53 F.3d at 1076.

## B. Likelihood of Confusion

■ "The 'keystone' of trademark infringement is 'likelihood of confusion' as to source, affiliation, connection or sponsorship of goods or services among the relevant class of customers and potential customers." *Sands, Taylor & Wood Co. v. Quaker Oats Co.,* 978 F.2d 947, 957 (7th Cir.1992), *cert. denied,* 507 U.S. 1042, 113 S.Ct. 1879, 123 L.Ed.2d 497 (1993). Section 32 of the Lanham Act expressly forbids conduct which results in confusion, providing that:

> Any person who shall, without the consent of the registrant—(a) use in commerce any reproduction, counterfeit, copy or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive ... shall be liable in a civil action by the registrant for the remedies hereinafter provided.

15 U.S.C. § 1114(1).[7]

Whether a likelihood of confusion exists is a question of fact. *Forum Corp. of North*

America v. Forum Ltd., 903 F.2d 434, 439 (7th Cir.1990). The Seventh Circuit considers the following factors when determining the likelihood of confusion: the degree of similarity in appearance and suggestion; the similarity of the products (or services) for which the name is used; the area and manner of concurrent use; the degree of care likely to be exercised by consumers; the strength of the complainant's mark; actual confusion; and an intent on the part of the alleged infringer to palm off his products (or services) as those of another. *McGraw–Edison v. Walt Disney* Prod., 787 F.2d 1163, 1167–68 (7th Cir.1986); *see also American Academy of Disability Evaluating Physicians Assoc. v. American Disability Evaluation Research Institute,* 90 C 6038, 1991 WL 128513, *9 (N.D.Ill. July 10, 1991) (Conlon, J.). Under Illinois law, claims under the ICFDBPA and the IDTPA are to be resolved according to principles set forth under the Lanham Act. *See Dorr–Oliver Inc. v. Fluid–Quip, Inc.,* 894 F.Supp. 1190, 1203–1204 (N.D.Ill.1995); *Spex, Inc. v. Joy of Spex, Inc.,* 847 F.Supp. 567, 579 (N.D.Ill.1994); *see also James Burrough Ltd.,* 540 F.2d at 274–75 ("Illinois Courts look to federal case law and apply the same analysis to state infringement claims.").

Defendants argue that there could be no likelihood of confusion because Berry's World offers the Collections at ten percent (10%) below the retail price—a practice, they argue, that an authorized dealer would not engage in. In support of this proposition, Berry's World offer the testimony of Frank Pellico, a collector, who stated that he would not confuse Berry's World with an authorized dealer because Berry's World "gives 10 percent off." (Defendants' Response to 12(N) Statement Ex. N, Pellico Dep. 14:16–15:8). However, in light of the significant amount of paraphernalia bearing plaintiff's trademark that defendants use in their advertising, displays, on Berry's World's storefront, and in promotional giveaways, and the evidence that certain authorized dealers were actually con-

---

7. See also section 43 of the Lanham Act, 15 U.S.C. § 1125(a), which provides similar language related to confusion and false designation

of origin, sponsorship, or approval of goods or services.

fused, (12(N) ¶¶ 104, 129–35), this Court finds that whether there is a likelihood of confusion is a disputed issue inappropriate for summary judgment. Defendants' motion for summary judgment on counts IV, V, VI and VII of plaintiff's complaint is thus denied.

### Conclusion

WHEREFORE, for the foregoing reasons, the Defendants' Motion for Summary Judgment on Counts I, II, IV, V, VI, and VII is denied.